JENKINS AND OTHERS *against* WALDRON.

An action on the case will not lie against the inspectors of an election, for refusing the vote of a person legally qualified to vote, without proving *malice* express or implied.

Officers required by law to exercise their judgments, are not answerable for mistakes in law or mere errors of judgment, without any fraud or malice.

IN ERROR, on *certiorari*, from a justice's court. *Waldron* brought an action on the case against *Seth Jenkins, Erastus Pratt, Daniel Clark,* and *William Coventry,* the plaintiffs in error, as inspectors of the election held in *Hudson,* in *Columbia* county, in *April,* 1811, for refusing to receive his vote, as an elector, &c.

The plaintiff below stated, in his declaration, that the defendants below were inspectors of the poll in the city of *Hudson,* at the general election in 1811; that the plaintiff was duly qualified to vote for members of the assembly; that he tendered his vote to the defendants, and that they wickedly and designedly refused his vote, and would not permit him to exercise his right of suffrage; to his damage, &c. The defendants pleaded the general issue.

The following facts appeared in the justice's return, as proved and admitted on the trial before him. The defendants below were duly elected and sworn as inspectors, at the general election, in 1811, and acted as such when the plaintiff below offered his vote at the poll for members of assembly. The plaintiff is a black or coloured man; and at the time he offered his vote he tendered a certified copy of a certificate of his being a free man, under the hand and seal of *Samuel Edmonds,* one of the judges of the court of common pleas of the county of *Columbia,* dated 9th *April,* 1811, which certificate was recorded in the office of the clerk of the town of *Livingston,* and the copy was certified by the clerk of that town. The plaintiff offered, at the same time, to make any other proof of his qualification to vote that the inspectors might require, and to take the oaths required by law. The defendants below rejected the plaintiff's vote, solely on the ground that *Samuel Edmonds,* at the time of giving the certificate of freedom, was not a judge according to law, and, therefore, not authorized to give the certificate. The inspectors declared they did not require any other proof of the plaintiff's qualification to vote, except a different certificate, or such a one as they should deem legal and valid.

One of the inspectors presented to the board his written protest against their decision, and which was produced at the trial.

Before the decision of the defendants, the plaintiff presented to them a certificate of the clerk of the county of *Columbia*, that on the 20th of *March*, 1810, *Samuel Edmonds* was appointed one of the judges of the court of common pleas of the county of *Columbia*, as by a certain commission, &c. remaining in the office of the clerk, &c. and that no *supersedeas* had been received for the said *Samuel Edmonds*, at the clerk's office, unless a new general commission of the pleas, which was received at the office, the 11th *March*, 1811, in which his name is not inserted, is to be considered as a *supersedeas*.

The plaintiff had, for 8 or 10 years previous to the election in 1811, voted for members of assembly, and at some of the elections during that period, some of the defendants were inspectors of the poll and received the plaintiff's vote.

*Samuel Edmonds*, from the date of commission down to the time of trial, had constantly continued to perform the duties, and exercise the powers, of a judge of the court of common pleas, &c. and before and since the month of *April*, 1811, as such judge, took the proof and acknowledgments of deeds, mortgages, and bail pieces, which were filed and recorded in the clerk's office, and performed all other acts pertaining to his office as such judge, of which the defendants were informed by him, previous to their rejection of the plaintiff's vote.

The exemplification of the commission, under the great seal, to *Edward P. Livingston*, *Samuel Edmonds* and others, judges of the court of common pleas, dated the 20th *March*, 1810, and recorded in the clerk's office the 29th *March*, 1810, was given in evidence: also a commission, dated 5th *March*, 1808, to *Jonathan Warner* and others, in which the name of *Edmonds* was not inserted as one of the judges, &c. and another commission dated the 2d *March*, 1811, directed to *Jonathan Warner* and others, in which the name of *Samuel Edmonds* was not inserted, as one of the judges, &c. There was no other commission of judges of the court of common pleas issued, and it appeared that *Samuel Edmonds* took the oaths under the commission of 1810 ; and that commission was seen and examined by the defendants before they rejected the plaintiff's vote. The clerk of the county had inserted in a gazette printed at *Hudson*, where *Samuel Edmonds* resides, a notice of the appoint-

ment of the persons named in the commission of 1811, as judges, justices, &c. among which the name of *Edmonds* did not appear. It appeared, further, that before *Samuel Edmonds* gave the certificate of the plaintiff's freedom, the clerk of the county had sent to him a notice in writing, stating that " a commission of the peace for the county was received at his office, on the 11th *March*, directed to *William Wilson* and others, in the words following: " Know ye that we have appointed and assigned, and by these presents do appoint and assign, you and every of you, jointly and severally, justices, to keep the peace in our county of *Columbia*," &c. " in which commission your name was not inserted, dated the 9th *April*, 1811. *M. Jenkins*, clerk. To *Samuel Edmonds*, Esq." which notice was received by *Edmonds* on the 10th *April*, 1811.

The justice stated further, that there was no evidence whatever given, at the trial, to show that the defendants, in the rejection of the vote of the plaintiff, were actuated by any corrupt or malicious motives towards the plaintiff, or by any other wish or desire than to discharge their duties as inspectors.

A certificate of *Elisha Jenkins*, the secretary of state, was also produced, stating that on examination of the minutes of the council of appointment it did not appear that it had ever been the practice of the council to direct a *supersedeas* to any judge, assistant justice, or justice of the peace, in any county, in cases where a new general commission was directed to issue, in which any judge, assistant justice, or justice of the peace, who was previously in the exercise of his office, by any commission, general or special, was not named.

On this evidence the counsel for the defendants below moved for a nonsuit, which was refused by the justice, who gave judgment for the plaintiff, for three dollars damages, and the costs.

*Van Buren*, for the plaintiffs in error. 1. By the 28th article of the constitution, it is directed that new commissions shall be issued to the judges of the county courts, except the first judge, and to justices of the peace, once, at least, in every three years.\* The new commission is, in effect, a *supersedeas* of the old commission. No writ of *supersedeas* was, therefore, necessary to be directed to Judge *Edmonds;* nor was any notice to him of the new commission requisite. A new commission virtually dis-

\* 1 *N. R. L.* 40.

charges all the former justices not named therein; for there cannot be two commissions in force at the same time.*

2. But there is another and an insuperable difficulty in this case. This action will not lie without alleging and proving that the defendants acted *wilfully* and *maliciously*, &c. The plaintiff must prove corruption, and a design to injure the plaintiff. The action does not lie for a mere error of judgment.†

*Jas. Strong,* contra. These defendants, though they may be considered as judges to a certain extent, yet judges of inferior jurisdiction, who exceed their authority, or abuse it, are not protected. The law in such case implies malice. Now the defendants knew, and perfectly understood, all the facts and the law in the case, yet they wilfully decided contrary to both.

But we contend that the inspectors are not judges, but *ministerial* officers only. In *Ashby* v. *White,*‡ though the judgment was arrested, by three of the judges, yet *Holt,* Ch. J. and *Powell,* J. were of opinion that the defendant was neither a judge, nor any thing like a judge; and the judgment of the K. B., in that case, was reversed in the house of lords.

By the law of this state, regulating elections, the inspectors may challenge persons who offer to vote, and may tender them the oaths prescribed, and inquire into their qualifications.§

But, even, if these officers have any judicial power, or discretion, still they are liable, if they go beyond their powers, or exercise them in an improper, illegal, or oppressive manner.‖

Then as to the validity of the certificate granted by Judge *Edmonds;* it is sufficient, if he was even a judge, *de facto,* at the time he gave it. His acts would be valid. All judicial and ministerial acts done by an officer, *de facto,* who comes into his office by colour of title, are good, as they concern the public, or the rights of third persons.¶

But we insist that he was, by common law, a judge, *de jure.* Though, in *England,* the demise of the king puts an end to the authority of the justices appointed by commission, yet notice to them of that fact is necessary. So, though their authority is determined by a new commission of the peace, yet, unless the new commission is shown to them, or is read in full county court or sessions held under it, or is proclaimed in the county, or the justices of the new commission sit and hold a court by virtue of their commission, the former commission is not counter-

NEW-YORK,
May, 1814.

JENKINS
v.
WALDRON.

* 1 *Bl. Com.*
353.

† *Harman* v.
*Tappenden
and others,*
1 *East,* 555.
*Drewy* v.
*Coulton,* *ib.*
563. note.

‡ 2 *Ld. Raym.*
938. 950. S. C.
6 *Mod.* 45.
*Holt s Rep.*
524. 1 *Bro. P.
C.* 45.

§ Sess. 36. c.
41. 2 *N. R. L.*
251  253. s 8,
9, 10, 11, 12.

‖ 4 *Vin, Abr.
Judges,* (F).
579   1 *Ld.
Raym* 467   2
*Lev.* 50. 2 *Bl.
Rep.* 1142.
1017. 1035.  1
*Burr.* 595.  5
*Johns. Rep.*
125.  7 *Johns.
Rep.* 549.  9
*Johns. Rep.*
581.

¶ 16 *Vin Abr.*
114   *Officer,*
(G. 3. 64.   *Y.
B.* 9 *Hen* VI.
32. *Latw.* 508.
519. 116. 1 *Ld.*
*Raym.* 658.
660. *Cro Eliz.*
699.  7 *Johns.
Rep* 549.  9
*Johns. Rep.*
135.

NEW-YORK,
May, 1814.

JENKINS
v.
WALDRON.

* 4 Inst. c. 28.
164, 165. 34
Ass. 8. Bro.
Commiss. 6. 14.
18. 4 Com.
Dig. 526. Jus-
tices, (A. 8.)
10 Edw. IV.
7. a.

manded.* The notice sent to Judge *Edmonds,* by the clerk of the county, was an officious and nugatory act, of which the judge was not bound to take notice. The clerk had no authority to give such notice. Where the duration of the office is not ascertained, it is held at the pleasure of the council of appointment. This is the case with the judges and justices of the county courts, and justices of the peace; but the 28th article of the constitution provides that new commissions are to issue to all of them, except to the first judge, once, at least, in three years. The *pleasure* of the council of appointment can only be signified by a *superse-deas.* In *England,* the king being a corporation *sole,* may express his pleasure in various ways; but the council of appointment, being a corporation aggregate, can speak only, or declare their will and pleasure, by writing under their seal. Suppose each individual member of the council should say to a judge or justice of the peace, " Sir, you are no longer a judge or justice," would he be bound to take notice of it, or would such a declaration put an end to his commission? Would it be a legal or constitutional expression of the pleasure of the council? The only legal mode of expressing their will and pleasure is by an instrument under seal, which is to pass the office of the secretary of state.

Such, also, is the sense of the legislature. By the act concerning the council of revision and council of appointment,† the secretary of state is required, as often as any person is appointed or superseded by the council of appointment, to send the commission and *supersedeas* speedily to the clerk of the county, who is to give notice thereof to the person appointed or superseded.

† Sess. 24. c.
27. 1 N. R.
L. 458. Sess.
36. c. 14. s. 4.

If *Edmonds,* then, was a judge, his certificate was legal and valid, and ought to have been received by the inspectors. They were bound to proceed according to the law and the facts. They admit they knew the facts, and they must be presumed to know the law. Having decided wilfully contrary to law, malice is implied, and they are liable to this action. Where a person has a vested right, known to these officers, and they devest him of it, an action lies. Judges do not make law. They declare it only, and if they decide knowingly against law, malice is implied.

In *Drewy* v. *Coulton, Wilson,* J. relied strongly on the statute of 7 and 8 *William* III. c. 7. as declaratory of the com-

mon law, though that statute was not applicable to the case of Ashby v. *White*. He admits that the ground of the decision, in that case, was not the *malice*. Lord *Holt* took no notice of the want of malice being any defence. There was no suggestion of want of malice. And the decision in the house of lords went on different grounds. The five resolutions passed by the *houses of parliament* do not speak of malice being necessary.*

*Van Buren*, in reply. The uniform practice of the council of appointment not to issue a *supersedeas* where there is a new commission, is proved by the certificate of the secretary of state. The commission is directed to the judges, assistant justices, and justices of the peace, jointly and severally, who together form the general magistracy of the county. Where a magistrate is left out of the commission, in *England*, it is true, there must be a personal notice to him, or the new commission must be read in court. This is necessary, because the magistrate continues in office at the pleasure of the king, until his demise, or a new commission issues, either of which facts he cannot be presumed to know until specially and formally made known to him. Here the magistrate may continue for three years; but he cannot hold his office beyond that period, unless a new commission issues. He knows from the date of his commission when his office must end. Personal notice is not, therefore, requisite. And, in case of a new commission, that is equivalent to a *supersedeas*, as to all the former justices not named in it.

A judge, *de facto*, is one who exercises the office by *colour of right*. The mere single fact of his acting as a judge, will not make him one, *de facto*, against all manner of right. After the new commission, Judge *Edmonds* had no more colour of right than if he never had been a judge.

It is true, that in the case of *Ashby* v. *White*, the court of K. B., *Holt*, Ch. J. dissenting, having decided that the action would not lie, that judgment was afterwards reversed in the house of lords. But on what ground? Precisely on the ground of *malice*, or a wilful and corrupt denial, on the part of the defendant, of the vote of the plaintiff. This appears from one of the resolutions of the house of lords, in answer to the resolutions of the house of commons, as printed, in a *note*, in the first edition of *Brown's Parliamentary Cases*. (49.) By some mistake, that part

**Margin notes:**

NEW-YORK, May, 1814.

JENKINS v. WALDRON.

* 1 *Bro. P. C.* 62. 2d edit. *Tomlins*, and notes. 3 *Chand. Debates*, 385.

NEW-YORK,
May, 1814.

JENKINS
v.
WALDRON.

of the note, containing the resolutions of the lords, is not printed in the second edition, edited by Mr. *Tomlins.* Justice *Wilson,* therefore, in the case of *Drewy* v. *Coulton,* was correct in saying that the house of lords put the justification of their decision on the ground of the wilful or malicious conduct of the officer. And he considered the statute of *William* III. as declaratory of the common law, that no action would lie against an officer for refusing a vote of an elector, unless such refusal was wilful and malicious.

SPENCER, J. delivered the opinion of the court. It is not necessary to the decision of this cause, to pronounce any opinion on the question, whether Judge *Edmonds* was a judge *de jure,* or *de facto,* when he gave the certificate that the defendant had duly proved himself to be a free man; for, admitting that Judge *Edmonds* was either, this action, as laid, is not maintainable. It is not alleged or proved that the inspectors *fraudulently* or *maliciously* refused to receive *Waldron's* vote; and this we consider to be absolutely necessary to the maintenance of an action against the inspectors of an election.

The case principally relied on by the counsel for the defendant in error is that of *Ashby* v. *White.* (2 *Ld. Raym.* 938.) There the declaration alleged that the rejection of *Ashby's* vote was done fraudulently and maliciously, and although the jury found the defendant guilty, the judgment was arrested by three judges, in opposition to the opinion of Chief Justice *Holt.* This judgment was afterwards reversed in the house of lords. The reasons for the reversal do not appear in the report of the case; but the ground of the reversal is distinctly stated in the *resolutions* of the lords, in answer to the resolutions of the commons, reprehending the bringing the action and the judgment thereon. The first resolution of the lords states, " that by the known laws of this kingdom, every freeholder, or other person having a right to give his vote at the election of members to serve in parliament, *and being wilfully denied, or hindered so to do,* by the officers who ought to receive the same, may maintain an action in the queen's courts against such officer, to assert his right, and to recover damages for the injury." (1 *Bro. Parl. Cas.* 49. 1st edit.) The case of *Harman* v. *Tappenden and others,* (1 *East,* 555.) and *Drewy* v. *Coulton,* in a *note* to that case, clearly show that this action is not maintainable, without stating and proving

malice express or implied on the part of the officers. In the case in the text, *Lawrence,* J. said, " there is no instance of an action of this sort maintained for an act arising merely from error of judgment;" and he cited Mr. Justice *Wilson's* opinion in *Drewy* v. *Coulton* with approbation. In that case the suit was for refusing the plaintiff's vote. Justice *Wilson* considered it as an action for misbehaviour by a public officer in the discharge of his duty, and that the act must be malicious and wilful to render it a misbehaviour; and he held that no action would lie for a mistake in law. In speaking of the case of *Ashby* and *White,* he considered it as having been determined by the house of lords on that ground, from the resolutions entered into by them. The whole of Judge *Wilson's* reasoning is clear, perspicuous, and irresistible; and is fully confirmed in *Harman* v. *Tappenden.* It would, in our opinion, be opposed to all the principles of law, justice, and sound policy, to hold, that officers called upon to exercise their deliberative judgments, are answerable for a mistake in law, either civilly or criminally, when their motives are pure, and untainted with fraud or malice.