## ABIJAH WHEELER *versus* DAVID PATTERSON.

An action on the case will not lie against the moderator of a town meeting, for refusing to receive the vote of a person legally qualified to vote, without shewing malice express or implied.

CASE against the defendant, for illegally and maliciously rejecting the plaintiff's vote for governor of this state, at a town meeting in *Temple*, March 12, 1816, the defendant being moderator of the meeting, and the plaintiff legally entitled to vote.

The cause was tried in this county at the last April term, upon the general issue, when it was satisfactorily proved that the plaintiff was legally entitled to vote for governor, and that his vote had been refused by the defendant, who was moderator of the meeting, as alleged in the declaration; but the court directed the jury, that they ought not to find a verdict for the plaintiff, unless they believed that the defendant had refused the vote maliciously, and from improper motives; and under this direction the jury returned a verdict for the defendant.

The plaintiff moved the court to grant a new trial, on the ground of a misdirection in thus instructing the jury, and the cause was continued to this term for advisement.

*J. Wilson,* for the plaintiff.

*Atherton* and *J. Smith,* for the defendant.

The opinion of the court* was delivered by

* WOODBURY, J., having been of counsel, did not sit.

RICHARDSON, C. J.  It seems that an action of this description cannot be maintained in *England*, without alleging and proving malice.  *Ashby* vs. *White*, 2 *L. Raymond* 938.  6 *Mod.* 45.—1 *East* 555 & 563, *note.*—1 *Bro. Par. Cas.* 49.  The law is settled to be the same in *New-York.* 11 *Johnson* 114, *Jenkins & al.* vs. *Waldron.*  But in *Massachusetts* it has been solemnly decided to be otherwise ; and their courts hold that those who reject the vote of a qualified elector are liable, although not chargeable with malice. (1)  They admit, however, that such an action could not be maintained in *England*, unless the injury was proved to have been done maliciously ; but they say, " In *England* " another remedy exists, which does not exist with us.  The " electors there all vote *viva voce ;* their names are taken " down by the returning officer, as well those whose votes " are received as those who are not permitted to vote, and " also the name of the candidate for whom they would vote, " of which a return is made to the house of commons. " There a revision by a committee takes place, and the re- " jected vote is counted, and has its effect upon the election, " if it was unlawfully rejected.  But with us there is no " such remedy ; and without an action there is no remedy " at all, either for the immediate or any subsequent elec- " tion."  This distinction seems to be the principal ground upon which they rest their decision ; and if this distinction is well founded in fact, and of sufficient importance to warrant such a departure in *Massachusetts* from the common law, there seems to be no good reason why we should not adopt their decision ; for electors in this state are in the same situation as to any other remedy, as the electors in that commonwealth.  But, notwithstanding we entertain the most entire respect for the decisions of that court, we have not been able, after the most mature reflection, to adopt their opinion upon this subject.  It is true that in *England* a vote, which has been illegally rejected, may in certain cases be received and counted, and have its effect upon the

Wheeler
*vs.*
Patterson.

(1)  11 Mass. R. 350, Lincoln *vs.* Hapgood & al.

Wheeler
*vs.*
Patterson.

election; but this is never done upon the application of the elector directly for that purpose, but is done incidentally in settling a contested election between rival candidates. It is, therefore, never the fruit of a remedy furnished the elector, whose vote has been improperly rejected, but of a remedy provided to correct an undue return of the sheriff. 1 *Wooddeson* 51.—1 *Bl. Com.* 181. It seems to be done usually upon the application of contending candidates, and not of electors. And when the member returned by the sheriff is indisputably elected, it cannot be done at all. It is not a remedy, to which an elector can resort in all cases to settle his right; but when his rights are thus settled, it is accidentally done upon the application of others. So that it seems to us that an elector in *England*, whose vote has been improperly rejected, cannot with propriety be said to have any other remedy than an action on the case to settle his right, any more than an elector in *Massachusetts* or this state has. It may be a defect in our laws on the subject of elections, that votes improperly rejected cannot afterwards be received and counted: and if it be, it can be easily cured by the legislature, but would not at all be amended in our opinion by sustaining an action on the case against an innocent moderator. So that this distinction between the situation of an elector in *England* and in this state, as to any other remedy, seems to us to be by no means of sufficient importance to warrant a departure from the common law on this subject. It is true, that moderators may decide wrongfully with the best intentions, and then the party will be without remedy. And so may a court and jury decide wrongly, and then the party will also be without remedy. Perfect justice in all cases never was and never will be administered in any human tribunal, and yet human tribunals must be entrusted with the ultimate decision upon our most important rights. So long as moderators act honestly and conscientiously, no great injustice will be done, even if they be entrusted to decide finally upon the rights of electors. If those rights, however, shall be found not to be sufficiently

secure in the hands of moderators, the legislature can provide further remedy; but, to use the language of the supreme court of *New-York* on this subject, " it would in our " opinion be opposed to all the principles of law, justice, and " sound policy, to hold that officers, called upon to exercise " their deliberate judgments, are answerable for mistakes in " law, either civilly or criminally, when their motives are " pure and untainted with fraud or malice." 11 *John.* 121.

*Judgment on the verdict.*