Tilghman, C. J.
This action was brought by Andrew Geyer, the defendant in error and plaintiff below, against Wecherly and Harpel, the plaintiffs in error, for wrongfully and maliciously refusing to receive the plaintiff’s vote, at an election by the congregation of the German Lutheran Churches of St. Michael and Zion, the defendants being inspectors and judges of the election. The question to be decided by the election was, whether a second minister should-be called to officiate in the said churches. And it was a question which excited strong feelings, because it was understood; that if a second minister was called, the German language only would be used in these churches, a matter much desired by some of the congregation, and warmly opposed by others, who wished that the English language should be introduced, without excluding the German. On the trial of the cause in the District Court, the great question was, whether the plaintiff was entitled to a vote. There was no exception to the evidence, but six exceptions have been taken to the charge of the court.
1. The first exception is so general that I shall take no notice of it. Our rules require that the errors should be specified.
2. “The court charged the jury, that to entitle a member of the congregation to vote, it .was- not necessáry that he should have taken the sacrament after the age of 18 years.”-
The original charter of this congregation, was granted by the late proprietaries of Pennsylvania, on the 25th day of September, 1765, and by the 11th section thereof, the right of voting was given “ to the contributing members, being communicants of the said congregation.” By an act of assembly, bearing date 3d Marche 178b, the original charter was confirmed, with some alterations, one.of which was, that no person'should be entitled to a vote "ho was under the age of 18 years. It appears then, taking both the original charter, and the confirming act, into consideration, that in order to be entitled to a vote, it was necessary that a man, besides having some other qualifications not now in question,, should be, 1st, A contributing member. 2d, A communicant of that congregation. 3d, Of the age of IS-years, The restriction as to age, omitted in the original charter, was very wisely introduced by the legislature, because it is not fit, that a youth under the age of 18, should have a voice in business of importance. But the age of taking the holy sacrament of the Lord’s supper, is a matter which is properly entrusted to the spiritual pastors of the congre *38 gation. For that reason, neither the charter, nor act of assembly prescribe any age for communing. The voter must be a communicant, but of what age, so far as concerns that qualification, it is immaterial.
3. “The court charged the jury, that the practice, at an election held in 1815, and other elections since that time, and in respect to other persons, as well as to the plaintiff below, was admissible to show the true construction of tine charter of the church.”
I do not perceive the force of this objection. There could be no eri'or in charging, that tixe evidence was admissible, because it had been admitted without exception. And having been admitted, the court might very properly say, that on points, not clearly expressed in the charter, «.he understanding of the congregation, evidenced by their practice, was a circumstance entitled to some consideration.
4. The court charged, “ that the defendants, as inspectors of the election, had no right to exercise, a sound discretion, in deciding whether a dissolution of the connexion between the congregation and an individual, as a member thereof, had taken place.” •
5. The court charged, “ that the plaintiff’s vote could not be refused, unless he had been regularly proceeded against, and disfrancliised, in the manner pointed out by certain church regulations. ”
These two exceptions are so connected, that I will consider them together. And in order to understand them, it is necessary to state some of the evidence. The defendants proved, that the plaintiff and other members of the congregation, formed themselvas into a society, who held their meetings at the old academy in Fourth Street. This society had a ministei’, and officers of their own, and the defendants contended, that they had separated themselves from the congregation of the St. Michael’s and Zion churches.' On the other hand, the plaintiff denied that the members of that society had any intent to separate,. their, only object having been, to procure religious instruction in the English language, for their children, Who were ignorant of the German. I do not think, that the formation of a society of this kind, was per se a separation from the other congregation, though they had a minister and officers of their own. It was a circumstance proper for the jury to take into consideration, and might have weight, connected with other circumstances. For I agree, with my brother Gibson, in his charge in the case of the Quo warranto, at Nisi Prius, November, 1818, that the question, whether a man had so separated himself, as to cease to be a member of a corporation, might depend on a variety of circumstances, and was proper to be decided by the jury, under the court’s direction, as usual in matters of law. The opinion of the District Court was, that a member of the St. Michael’s and Zion congregation, who once possessed all the qualifications necessary for a vote, retained his right of voting, until disfranchised *39 by a-proceeding according to the church regulations $ and that the inspectors of the election had no right to consider, whether he had lost, or relinquished his privilege of voting. To this opinion I cannot assent. It is certain, that a man may separate himself from a .religious congregation, at his pleasure. And he may declare his intention so openly, and unequivocally, that there can be no doubt of it. And this is often done. It frequently happens, that men change fheir religious opinions and principles, and declare that they can no longer with a good conscience remain members of the church to which they belong. Now, suppose this should be the case with one of the members of the Lutheran Church; would not the inspectors have a right, and would it not be their duty to taire notice of it, and refuse the vote of such person, if he offered it? To be a member of the church is ,a necessary qualification, and how can he be a member, who has disavowed -his membership ? So, whether he disavowed it or not, he would lose his membership, If he united himself to another church, whose articles of faith differed substantially from the Lutheran creed. As to a disfranchisement, by a proceeding under the church regulations, it will be found, on reference to these regulations, that' they apply only to cases of delinquency, and not to a voluntary separation. So that the Distriot Court certainly, went too far,. in saying, that a man could not lose his membership, or at least, that the inspectors could not take notice of it, unless he had been proceeded against, and disfranchised according to the church regulations.
The counsel for the defendants have contended, that the District Court'Were in error, in not charging the jury expressly, that this action could not be supported unless the plaintiff’s vote was wilfully and maliciously refused-by the defendants. Upon a careful examination of all the points on which the court was requested to deliver its opinion, I do not find that this was one. The declaration alleges malice, and for ought that appears, the law, as laid down by the defendants counsel, was not denied. Nevertheless, as the cause is to go to a second trial, it may be proper, that the opinions of this court should be known on a point so important. We have no doubt that malice is an ingredient, without which the action cannot be supported. By malice, I mean the refusal of a vote from improper motives, and contrary to the inspector’s own opinion. It is not necessary that this should be expressly proved. The jury may infer it from circumstances. Direct, and positive proof, in a case of this kind, is hardly to be expected. But a man who is placed in a public station as an officer of the commonwealth, or of a corporation, in which, though not strictly a judicial officej. he must necessarily exercise 'his judgment, (such as an inspector, or judge of an election,) is not liable to an action for an erroneous judgment, provided he acts with purity and good faith. But, that he is responsible, if he acts wilfully and maliciously, was decided by the English House of Lords in the case of Ashby v. White, 1 *40 Bro. Parl. Cas. 49, and has been held for law ever since. Lord Holt, indeed, in his argument on that case, in the Court of King's Bench, 2 Ld. Raym, 938, takes no notice of malice, and seems to have been of opinion, that the officer who refused a good vote, at an election of members to come into parliament, was at all events liable to an action. But in that- he was 'wrong, though he was right in his opinion, that the plaintiff was entitled to judgment, because the declaration alleged malice. The judgment was arrested in the Court of King’s Bench, by the opinion of three justices, against Holt. But in the House-of Lords, the plaintiff obtained his judgment, and in the resolution of the Lords, (supposed to have been drawn up by Lord Holt,) the decision is placed on the ground of malice. This is asserted by Wilson, J., in the case of Drewe v. Coulton, reported in a note, to the case of Harman v. Tappenden, 1 East. 563. The English cases since our revolution, the laws of this commonwealth forbid me to cite. I do not know that this point has been directly decided in Pennsylvania, but it has in New-York, in Jenkins, &c. v. Waldron, 11 Johns. 114, and in Connecticut, in Swift v. Chamberlaine, 3 Connect. Rep. 537. There was a decision to the contrary in the Supreme Court of Massachusetts, 11 Mass. 350, from which, with great deference to the learned judges of that court, I am constrained to differ.
6. The sixth and last exception is, “that the court in their charge, decided on the facts as well as the law, and left nothing but the question of damages to the jury.”
That a court has no right to decide facts, and that it is error, if it does decide them, is certain. But in the records which came before us, it is sometimes difficult to say, whether the court has taken the fact from the jury, or only expressed its own opinion, still leaving it to the jury. This the court has a right to do, and whether more has been done in the present case, it is not material to decide, because the judgment is to be reversed; and on the next trial, the defendants counsel will have an opportunity of requesting the court to say explicitly, what it is that is left to the jury, and what taken from them.
I am of opinion, that the judgment should be reversed, and a venire de novo awarded.
Judgment reversed and a venire facias de novo awarded.