WILLARD GOETCHENS *v.* EDWARD MATTHEWSON et al.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1871.)

To sustain an action against inspectors of election for refusing to receive the vote of a person qualified to vote, malice on the part of the inspectors must be shown in making the refusal.

*Jenkins* v. *Waldron* (11 Johns., 114), followed on this point.

It seems that section 2 of the act of congress, approved March 3d, 1865, entitled "An act to provide for the enrolling and calling out of the national forces and for other purposes," which renders deserters incapable of exercising any of the rights of citizens of the United States, refers to deserters who have been duly convicted as such by some court of competent jurisdiction.

Goetchens *v.* Matthewson.

Plaintiff, a resident and registered voter of an election district in this State, offered his vote at the polls of such district on a general election day to the defendants, inspectors of election of such district. His vote was challenged on the ground that he had deserted from the United States service. The preliminary oath prescribed by statute having been administered to him, he replied to the question " whether he had been in the military service of the United States?" that he had, but declined answering further questions as to whether he had an honorable discharge from such service, and whether he left such service without leave. He then offered to take the general oath, but defendants refused to administer it and to proceed further until he should answer the above questions, and his vote was excluded.

*Held,* in an action brought for damages for improperly refusing such vote, the only evidence tending to prove malice on the part of defendants being that they were informed by a bystander that the secretary of State had expunged from the forms circulated, to be used by them as inspectors, the questions insisted on by them, and it appearing that by an act of congress deserters were rendered incapable of exercising the rights of citizens of the United States that defendants must be deemed to have acted without malice, and that a refusal to submit to the jury the question of malice was proper, and a nonsuit properly granted. (MILLER, P. J., dissenting.)

MOTION by plaintiff for new trial on exceptions ordered to be heard in the first instance at General Term.

The action was brought to recover damages from the defendants, inspectors of election, for improperly refusing to receive the plaintiff's vote. The court granted a nonsuit on motion of defendants. The facts appear in the opinion.

*Hunt & Green* for plaintiff.

*L. Seymour* for defendant.

Present—MILLER, P. J., JAMES and PARKER, JJ.

PARKER, J. The defendants, in the year 1868, were inspectors of election, in election district No. 2, in the town of Triangle, in the county of Broome. The plaintiff was at the time of the general election in this State, on the third day of November in that year, and then had been for twenty-two years next preceding, a resident of said election district, and was registered as a voter therein, and at the said general election,

for the purpose of voting, offered his ballot duly folded to the said inspectors, which was challenged, on the ground that the plaintiff had been in the military service of the United States, and had deserted therefrom. Plaintiff was thereupon required to take the preliminary oath prescribed by the statute, which is as follows: " You do swear (or affirm) that you will fully and truly answer all such questions as shall be put to you touching your place of residence and qualifications as an elector." (1 R. S., 430, § 18, 5th ed.) This oath he took, and was asked by the chairman of the board if he had been in the military service of the United States. His answer was that he had. The chairman then asked him if he had an honorable discharge therefrom. This question he refused to answer. He was then asked if he left the service without leave. This also he refused to answer. The challenge not being withdrawn, the plaintiff then offered to take the general oath. The board refused to administer the general oath or to proceed further with him, until he should answer the above questions, and his vote was excluded.

Upon the trial at the circuit the plaintiff was nonsuited, on the ground that there was no evidence of any malice or corrupt conduct on the part of the defendants, and plaintiff excepted. Plaintiff requested to be allowed to go to the jury upon the question of malice and was refused, to which he excepted. He also requested to go to the jury on the question of damages. This also was refused and plaintiff excepted. The exceptions were ordered to be heard in the first instance at the General Term.

The defence, based upon the ground that the plaintiff was a deserter, was set up in the second answer to the complaint. To this answer the plaintiff demurred, and the demurrer was sustained. From the order sustaining it no appeal was taken. No question, therefore, can arise in the case as to the defendants' right to exclude plaintiff's vote because he was a deserter. That question is foreclosed, and the case must rest upon other grounds than that.

But, whether the plaintiff's vote was properly excluded or

Goetchens *v.* Matthewson.

not is immaterial in this suit, provided the holding at the circuit was correct, that in order to maintain the action it was necessary to show malice on the part of the defendants, and provided also there was not sufficient evidence of malice to require the submission of the question to the jury.

It was held in *Jenkins* v. *Waldron* (11 Johns., 114), that an action on the case will not lie against inspectors of election for refusing the vote of a person legally qualified to vote without proving malice express or implied. We have been referred to no case overruling this proposition, and I have not been able to find one, although the class of cases holding that where a ministerial duty is violated by a public officer, an injured party may have redress by action, would seem in principle to conflict with that case, nevertheless the proposition there decided must, I think, be deemed a rule of law applicable to the case at bar. That decision is based upon those in *Harman* v. *Tappenden* (1 East., 555), and *Drewe* v. *Coulton*, reported in a note to that case, which show that the action is not maintainable without stating and proving malice, express or implied, on the part of the officers.

SPENCER, J., in the opinion in *Jenkins* v. *Waldron*, says: "It would, in our opinion, be opposed to all the principles of law, justice and sound policy to hold that officers called upon to exercise their deliberative judgments are answerable for a mistake at law, either civilly or criminally, when their motives are pure and untainted with fraud or malice."

In *Drewe* v. *Coulton*, WILSON, J., said: "I think that if an action were to be brought upon every occasion of this kind by every person whose vote was refused, it would be such an inconvenience as the law would not endure. A returning officer, in such a case, would be in a most perilous situation. This gentleman was put in a situation where he was bound to act, and if he acted to the best of his judgment it would be a great hardship that he should be answerable for the consequences, even though he is mistaken in a point of law."

In the case at bar the defendants were not acting wantonly,

without any show of right; but under section 4 of the act of congress, entitled " An act to amend the several acts heretofore passed to provide for the enrolling and calling out of the national forces, and for other purposes," approved 3d March, 1865, might well have believed that the ground of challenge, that plaintiff was a deserter, &c., was, if true, well taken, and that they were required to question him, under the preliminary oath, as to its truth. That section makes deserters incapable of exercising any of the rights of citizens of the United States. But as construed by the court, upon the decision of the demurrer in this case, and I think correctly, deserters duly convicted as such by some court of competent jurisdiction were intended. The action of the defendants in excluding the vote without the proper evidence of such conviction should be regarded as a mistake in law merely, unless the circumstances rebut such presumption.

Plaintiff's counsel claim that defendants had knowledge of a decision of the Court of Appeals, holding the act of congress in respect to this penalty for desertion unconstitutional, also that they had notice that the secretary of State had expunged from the forms circulated, to be used by them, the questions insisted upon by them, and that these facts were sufficient to show that defendants were actuated by malice, or at all events to require the submission of the question to the jury.

The case does not show these alleged facts with sufficient clearness and certainty to make them available for plaintiff if they existed. As to the decision of the Court of Appeals, in the case of *Green* v. *Shumway* (39 N. Y. R., 418), the only one on the subject, decides merely that the test oath required by the act of the legislature of this State, to provide for a convention to revise and amend the Constitution, passed March 29, 1867, was unconstitutional, and does not pass upon the validity of the law of congress, upon which the defendants acted. Moreover, no authentic evidence of that decision appears by the case to have been adduced to them.

In regard to the expunging by the secretary of State of

the questions in the forms in regard to desertion, this was shown to the defendants only by its being so asserted by a person present, while the question of the plaintiff's right to vote was pending before them, and no other evidence of the fact exists in the case.

These circumstances are wholly insufficient to rebut the presumption of good faith on the part of the defendants in their action in rejecting plaintiff's vote, and did not make it incumbent upon the court to submit the question of malice to the jury.

The court was right, therefore, in nonsuiting the plaintiff. The motion for a new trial should be denied, with costs, and judgment rendered upon the nonsuit for the defendants.

JAMES, J., concurred.

MILLER, P. J., dissenting. I cannot concur with the opinion of my brother PARKER in this case. In the first place, I think that the court erred in refusing to allow the plaintiff to go to the jury upon the question of malice. The defendants had information of a decision which involved the same principle which is presented in this case, and of the expunging by the secretary of State of the questions and answers in the forms in regard to desertion. Surely this was sufficient to put them on inquiry and to cause them to hesitate before they arrived at the conclusion to exclude the voter, and to refuse to administer to him the general oath which he offered to take. As the facts stood, the question of good faith and malice should have been submitted to the jury, and the plaintiff should not have been nonsuited.

I am also of the opinion that the defendants were not acting as judicial officers in requiring the plaintiff to answer questions not authorized by law, and in refusing to administer the oath to him, and are not protected as such in their erroneous decision. As inspectors of election they were merely ministerial officers, and are therefore, in my opinion, liable for a failure to perform the duty imposed upon them. The case of *Jenkins* v. *Waldron* (11 Johns., 114), which is relied

upon as decisive of the question, is a strong authority in favor of the general doctrine that no action will lie against inspectors of election for refusing the vote of a person legally qualified to vote, without proof of malice express or implied. That case, however, is scarcely applicable to the question now presented. The inspectors there were acting clearly within their jurisdiction in deciding the question which was presented, while here they went far beyond it in propounding inquiries which were entirely unauthorized, and without any legal sanction. It may also be remarked that the force of the case cited is very much impaired and shaken by subsequent cases in this State, which hold that those officers, and others similarly situated, are liable to an injured party for a failure or neglect to perform a ministerial duty.

In *The People* v. *Pease* (30 Barb., 588), it was held that inspectors of election act ministerially in determining whether they will receive or reject the vote of an elector. ALLEN, J., after referring to the case of *Waldron* v. *Jenkins, supra,* and the authorities upon which it is founded, remarks: "But inspectors of election were not distinguished from any other officers who are not judges or 'anything like judges,'" thus questioning the correctness of the doctrine laid down. It is also worthy of observation that the question as to the liability of ministerial officers is not adverted to or discussed at all in the case of *Waldron* v. *Jenkins* in the opinion of the distinguished judge, and it was decided upon the authority of the English cases cited. Justice ALLEN further remarks, in *The People* v. *Pease:* "The statute in this State vests no discretion with the inspectors of election whether to receive or reject the vote offered, if the party offering to vote submits to take the oath prescribed by law. It is true they may at their peril reject a vote, and proof that the person offering it was *not an elector entitled to vote* will be a justification." After citing the statute (2 R. S., 430, § 18 *et seq.*, 5 Edm.) and commenting on the same, he proceeds to say: "The elector is made the judge of his own qualification, and his conscience takes the place of the judgment and decision of every other

tribunal for that occasion. The inspectors may probe his conscience and instruct and advise, but they cannot decide upon his qualifications." It is true that section 20 provides that if the elector shall refuse to take the preliminary oath or answer fully any questions which shall be put to him, his vote shall be rejected. But this relates, of course, to questions which "tend to test his qualifications"  *  *  *  "and his right to vote," as provided in section 19, and would not authorize the inspectors to make examination as to facts and circumstances totally irrelevant, and which had no application whatever to the subject. They would have no right to ask as to the private affairs or conduct of the elector, and much less right to examine him as to an alleged offence which he had perpetrated, which did not disqualify him, or as to an alleged qualification which was not recognized in the law and which they had no authority to inquire about. When they undertake to ask questions which do not test the qualifications of the elector to vote, they exceed their jurisdiction, and he is under no obligations to answer such questions. It cannot be tolerated that an inspector of election is authorized to institute an inquisitorial examination as to the personal conduct of the elector and his private affairs, and is protected under the sanction of a judicial determination. The statute prescribes the duty of these officers, and when they go beyond it they are not protected from liability any more than ministerial officers. The decision in the case last cited was affirmed in the Court of Appeals, and it was then held that inspectors of election were mere administrative and not judicial officers. Selden, J., at page 65, remarks: "Inspectors are required to decide some questions, but they are such as ministerial officers are often required to decide."

The principle is well settled that where an individual sustains an injury by the misfeasance or nonfeasance of a public officer who acts or omits to act contrary to his duty, the law gives redress to the injured party by action. (See *Adsit* v. *Brady*, 4 Hill, 630; *Robinson* v. *Chamberlin*, 34 N. Y., 389,

395; *Fulton Fire Ins. Co.* v. *Baldwin*, 37 N. Y., 648; *Mills* v. *The City of Brooklyn*, 32 N. Y., 489, 497.)

The application of this principle renders the defendants liable for requiring of the plaintiff what the law did not authorize, and for refusing to allow him to vote when he was entitled to do so. That the plaintiff was illegally deprived of the privilege of voting by the defendants, is clearly settled by the decision of the Court of Appeals in *Green* v. *Shumway* (39 N. Y., 418).

If inspectors of election have the power to examine persons offering to vote upon subjects entirely foreign to any inquiry as to their qualifications, then to a certain extent they might control the result of an election by putting offensive questions and upon a refusal to answer them rejecting the vote of an elector. Such a construction of the law would be conferring upon them authority which clearly never was contemplated.

As the court erred in the trial in refusing to submit the case to the jury and in granting a nonsuit, a new trial must be granted, with costs to abide the event.

New trial denied.