Miller, P. J.,
dissenting. I cannot concur with the opinion of my brother Pajeiker in this case. In the first place, 1 think that the court erred in refusing to allow the plaintiff to go to the jury upon the question of malice. The defendants had information of a decision which involved the same principle which is presented in this case, and of the expunging by the secretary of State of the questions and answers in the forms in regard to desertion. Surely this was sufficient to put them on inquiry and to cause them to hesitate before they arrived at the conclusion to exclude the voter, and to refuse to administer to him the general oath which he offered to take. As the facts stood, the question of good faith and malice should have been submitted to the jury, and the plaintiff should not have been nonsuited.
I am also of the opinion that the defendants were not acting as judicial officers in requiring the plaintiff to answer questions not authorized by law, and in refusing to administer the oath to him, and are not protected as such in their erroneous decision. As inspectors of election they were merely ministerial officers, and are therefore, in my opinion, liable for a failure .to perform the duty imposed upon them. The case of Jenkins v. Waldron (11 Johns., 114), which is relied *220 upon as decisive of the question, is a strong authority in favor of the general doctrine that no action will lie against inspectors of election for refusing the vote of a person legally qualified to vote, without proof of malice express or implied^ That case, however, is scarcely applicable to the question now presented. The inspectors there were acting clearly within their jurisdiction in deciding the question which was presented, while here they went far beyond it in propounding inquiries which were entirely unauthorized, and without any legal sanction. It may also be remarked that the force of the case cited is very much impaired and shaken by subsequent eases in this State, which hold that those officers, and others similarly situated, are liable to an injured party for a failure or neglect to perform a ministerial duty.
In The People v. Pease (30 Barb., 588), it was held that inspectors of election act ministerially in determining whether they will receive or reject the vote of an elector. Allen, J., after referring to the case of Waldron v. Jenkins, supra, and the authorities upon which it is founded, remarks: u But inspectors of election were not distinguished from any other officers who are not judges or 6 anything like judges,’ ” thus questioning the correctness of the doctrine laid down. It is also worthy of observation that the question as to the liability of ministerial officers is not adverted to or discussed at all in the case' of Waldron v. Jenkins in the opinion of the distinguished judge, and it was decided upon the authority of the English eases cited. Justice Allen further remarks, in The People v. Pease: “ The statute in this State vests no discretion with the inspectors of election whether to receive or reject the vote offered, if the party offering to vote submits to take the oath prescribed by law. It is true they may at their peril reject a vote, and proof that the person offering it was not am, elector entitled to vote will be a justification.” After citing the statute (2 R. S., 430, § 18 et seq., 5 Edm.) and commenting on the same, he proceeds to say: “ The elector is made the judge of his own qualification, and his conscience takes the place of the judgment and decision of every other *221 tribunal for that occasion. The inspectors may probe his conscience and instruct, and advise, but they cannot decide upon his qualifications.” It is true that section 20 provides that if the elector shall refuse to take the preliminary oath or answer fully any questions which shall be put to him, his vote shall be rejected. But this relates, of course, to questions which “tend to test his qualifications” * * * “ and his right to vote,” as provided in section 19, and would not authorize the inspectors to make examination as to facts and circumstances totally irrelevant, and which had no application whatever to the subject. They would have no right to ask as to the private affairs or conduct of the elector, and much less right, to examine him' as to an alleged offence which he had perpetrated, which did not disqualify him, or as to an alleged qualification which was not recognized in the law and which they' had no authority to inquire about. When they undertake to ask questions which do not test the qualifications of the elector to vote, they exceed their jurisdiction, and he is under no obligations to answer such questions. It cannot be tolerated that an inspector of election is authorized to institute an inquisitorial examination as to the personal conduct of the elector and his private affairs, and is protected under the sanction of a judicial determination. The statute prescribes the duty of these officers, and when they go beyond it they are not protected from liability any more than ministerial officers. The decision in the case last cited was affirmed in the Court of Appeals, and it was then held that inspectors of election were mere administrative and not. judicial officers. Selden, J., at page 65, remarks: “Inspectors are required to decide some questions, but they are such as ministerial officers are often required to decide.”
The principle is well settled that where an individual sustains an injury by the misfeasance or nonfeasance of a public officer who acts or omits to act contrary to his duty, the law gives redress to the injured party by action. (See Adsit v. Brady, 4 Hill, 630; Robinson v. Chamberlin, 34 N. Y., 389, *222 395; Fulton Fire Ins. Co. v. Baldwin, 37 N. Y., 648; Mills v. The City of Brooklyn, 32 N. Y., 489, 497.)
The application of this principle renders the defendants liable for requiring of the plaintiff what the law did not authorize, and for refusing to allow him to vote when he was entitled to do so. That the plaintiff was illegally deprived of the privilege of voting by the defendants, is clearly settled by the decision of the Court of Appeals in Green v. Shumway (39 N. Y., 418).
If inspectors of election have the power to examine persons offering to vote upon subjects entirely foreign to any inquiry as to their qualifications, then to a certain extent they might control the result of an election by putting offensive questions and upon a refusal to answer them rejecting the vote of an elector. Such a construction of the law would be conferring upon them authority which clearly never was contemplated.
As the court erred in the trial in refusing to submit the ease to the jury and in granting a nonsuit, a new trial must be granted, with costs to abide the event.
New trial denied.