# THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, *v.* HENRY BOAS, APPELLANT.

*Election — refusal of an inspector to receive a vote — his act must be shown to have been willful to render it a felony.— 1872, chap. 675, sec. 67.*

At an election, held in the city of New York in November, 1881, one Gerdes, who was duly qualified and lawfully entitled to vote thereat, tendered his vote, but the same was by the board of inspectors of election, of which the defendant was a member, refused upon the ground that some person had already voted upon his name. The inspectors, after having informed him of that fact,

told him to come back in an hour and that they would send to head-quarters for information. Upon his return they told him that they had received an answer and declined to receive his vote. It appeared that they had sent to the chief of the bureau of elections, and that he suggested in the presence of Gerdes that the best way to settle the matter would be by an application for a *mandamus.*

Upon the trial of the defendant, one of the inspectors, upon an indictment based upon section 67 of chapter 675 of 1872, making it a felony for any inspector of election to "willfully exclude any vote duly tendered, knowing that the person offering the same is lawfully entitled to vote at such election:"

*Held,* that in order to justify a conviction it must be shown that the action of the defendant was willful, that is, that if not malice at least a decided intention, designedly and purposely to exclude the vote, must be proved.

APPEAL from a judgment and conviction, entered upon the trial of the defendant in the Court of General Sessions of the Peace, in and for the city and county of New York, for a violation of section 67 of the election law. (1872, chap. 675.)

*William F. Kintzing* and *John E. Brodsky,* for the appellant.

*John McKeon,* for the respondents.

BRADY, J.:

The defendant was indicted for a violation of the election and registry law of the city and county of New York, passed May 14, 1872, and its amendments, in having willfully excluded the vote of John F. Gerdes at the November election of 1881, knowing that he was legally entitled to vote at such election. He demanded a separate trial and was tried and convicted at the November sessions of 1882, and sentenced to one year's imprisonment in the state prison.

The indictment charged that Gerdes was entitled to vote at the election named, and that the appellant, well knowing that he was lawfully entitled to vote and a duly qualified voter at such election, did then and there feloniously and willfully exclude the vote of Gerdes so tendered, against the form of the statute in such case made and provided. The testimony in the case abundantly shows the performance of all the duties on the part of Gerdes, the voter, which required from the inspectors the reception of his ballot. But it appears that some person had voted in his name prior to his presentation of his vote, and it was for that reason that the defendant with the other inspectors, declined to receive his vote.

It appears also that he made three applications to have his ballot received; that upon his first application he was told by the inspectors after having been informed of the incident already mentioned, viz., that some person had voted in his name, that he might call back in an hour and that they would send to head-quarters for information; that he went back in an hour or so and asked whether they had received any answer and they replied in the affirmative.

For the defense it was shown that they did send to John J. O'Brien, who was the chief of the bureau of elections, in reference to the vote of Mr. Gerdes and asked his advice, and that he suggested that the best way to settle the matter was by an application by Mr. Gerdes for a *mandamus*; that there was plenty of time and lawyers present to procure it. There is no doubt upon the evidence that the suggestion was made in the presence and hearing of Mr. Gerdes, for a Mr. Hall, a witness for the prosecution, stated that he heard Mr. O'Brien say something about getting a *mandamus* and that Gerdes was present.

There is no doubt that the defendant, as one of the inspectors, committed a grave error in refusing to accept the vote of Gerdes, and that it resulted in depriving the voter of the highest privilege he can exercise under our forms of government. But the statute requires that the exclusion shall be willful and to be willful there must exist, if not malice, a decided intention designedly and purposely to exclude the vote. To do an act willfully is to do it willingly, by design — " on purpose," Worcester's Dictionary. Such was not this case. The inspectors assigned the reason. It was not sufficient in law, it is true, but they were evidently impressed and sought advice from the chief of the bureau of elections, who suggested what he considered to be the proper mode of disposing of the controversy. He was in error, it is true, but being persons uneducated in law and perhaps not sufficiently advised of their duties as to understand them perfectly, they placed reliance upon the advice thus given and by a person connected with the bureau of elections. This deprives the case of the essential element, under the statute, of malice or deliberate design and intent, and renders it necessary to reverse the judgment pronounced against the appellant.

The learned recorder charged the jury that if they came to the conclusion that Mr. Gerdes was a legal voter and had the legal right

to vote, and that the defendant willfully excluded his vote, knowing at the time that he was duly and legally authorized to vote at that election, it was a felonious act on his part and within the meaning of that term, and that he would be guilty of the offense charged in the indictment. This was excepted to and the exception seems to have been well taken, because the proposition declared is that if the defendant knew that the voter was legally authorized to vote and his vote was excluded, it was willfully done. This is not justified by the evidence in the case.

The learned recorder also charged the jury that if a majority of the board, acting as a board, the defendant being one of the majority, willfully and knowingly, all being actuated with the same common intent and motive, feloniously to exclude the vote of Gerdes, the act of one would be the act of all, or the act of the majority incurred in excluding the vote, and that they, that is, the persons composing the majority of the board, would be jointly and severally liable and should be convicted. This was stating the law of the case accurately, because it presented the necessary elements to justify a conviction, namely, that the defendant should be actuated by a common intent and motive feloniously to exclude the vote of Gerdes. If the intention feloniously existed, then the vote would be willfully excluded. If the motive was a felonious one, then the vote would be willfully excluded, and the appellant would be within the provisions of the statutes and liable to conviction and punishment.

The proposition which runs through the charge seems to be, that if the vote was excluded, the defendant knowing that Gerdes was entitled to vote, he having the necessary qualifications and the right to do so, it was a willful act to exclude the vote, and one, therefore, which came within the provisions of the statute. This is not the law of this case, although the general proposition is correct, because it is evident that the exclusion of the vote by the appellant rested upon the proposition that some person had voted in his name, and that the inspectors thought they had no power to receive another vote, such vote having been received, although erroneously. The suggestion emanating from the inspectors to Mr. Gerdes that he should procure a *mandamus* seems to rest upon no other proposition than that they should be thus protected in doing what they considered would be an erroneous exercise of their duty, viz., the receipt

of the vote when one had already been given in the name of the voter presenting his ballot.

If the construction of the statute be that the mere presentation of a vote, by a person who is known to be qual'fied as a voter, is sufficient, under circumstances such as presented themselves in this case, to justify the conviction as an act willfully done, then there must be a departure from rules which govern cases of a kindred character, and which seem to have been well settled by the adjudged cases. For example, in the case of *Jenkins* v. *Waldron* (11 Johns., 114) it was held that an action on the case would not lie against inspectors of an election for refusing the vote of a person legally qualified, without proving malice, express or implied. The court said in that case:

"It is not alleged or proved that the inspectors *fraudulently* or *maliciously* refused to receive Waldron's vote; and this we consider to be absolutely necessary to the maintenance of an action against the inspectors of an election."

And in Bishop on Statutory Crimes (§ 806) it is stated as a proposition in reference to the persons intrusted by law to pass upon the qualification of voters, that they are not answerable to an indictment when what they do is done through mistake, either of law or fact, being honestly done.

It must be further said that the section under which the defendant was indicted makes the exclusion of the vote a felony, and the general rule of law in regard to a felony is that there must be an intent to do wrong, and the intent must be proved beyond reasonable doubt. It is true that the inspectors are not invested with any discretion as to the rejection or acceptance of a vote, when the person offering it has the necessary qualifications authorizing him to express it; but the language of the statute is "willful." It is not that if they reject the vote of a person duly qualified they may be convicted, but they must do it willfully, and that means with knowledge aforethought, and with a wicked design. If this be not so then the word willful has no force in the statute, and might just as well be expunged.

For these reasons it is thought, as already suggested, that the judgment must be reversed, and a new trial ordered, upon which the people may be able to show, from facts and circumstances, the existence of a deliberate intent or design to do wrong.

It is the determination of this court, and must be of every tribunal in the State, to preserve unconditionally and absolutely the right of a qualified voter to exercise his franchise, and to punish, whenever the facts justify it within the provisions of the statute, any departure from the strict duty of the inspectors, who in reference to the vote are the depositaries of a great public trust, and this suggests, what has frequently been stated both in and out of the courts of justice, that inspectors of election should be educated and intelligent men, thoroughly instructed in the duties that they are to perform, so that when the voter presents himself they shall understand precisely the duties incumbent upon them, and thus preserve the absolute right of the voter, without interference and without impediment to express his vote, if he possesses the qualifications of the statute and is willing to take the oath required by law. It may be troublesome to make selections of such persons, but the importance of doing it results from the character of the duties to be performed as illustrated by this case, in which it is quite clear that if the inspectors had thoroughly understood their duties the vote of Gerdes would not have been excluded.

Judgment reversed, and new trial ordered.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment reversed, new trial ordered.