KELLY (BLOOMER v.). See Case No. 18,-242.

KEYWORTH (GREENHOUGH v.). See Case No. 18,299.

KOSCIUSKO (ARMSTRONG v.). See Case No. 18,226.

# L.

## Case No. 18,307.

### Case of LANGE.

### [13 Blatchf. (1877) 546.] [1]

Supreme Court of New York, General Term.

FALSE IMPRISONMENT — ILLEGAL SENTENCE — PERSONAL LIABILITY OF JUDGE.

[1. Where a sentence imposed by a district court is held illegal by the supreme court of the United States on a writ of habeas corpus, but by a divided court, and only after a most thorough investigation into the state of the law upon the subject, it cannot be said that the act of imposing the sentence did not require the exercise of judicial functions, or that the propriety of the sentence was not, at least, doubtful. Under such circumstances, therefore, the judge cannot be held civilly liable for inflicting an unlawful imprisonment.]

[2. When a party has been brought before a court of justice in a legal manner, and circumstances are presented requiring a decision to be made, the tribunal making it cannot be deprived of protection from personal liability therefor because it may afterwards, upon fuller investigation, turn out to have been erroneous. This is especially true where the action of the judge is in accordance with a previous decision of an appellate tribunal from which he is bound to receive the law, and his actions were subsequently held illegal only by a decision of that tribunal which modifies or limits such previous decision.]

Action by Edward Lange against ――― Benedict for false imprisonment.

Edward Lange was indicted in the circuit court of the United States for the Southern district of New York, for stealing mail bags belonging to the post office department of the United States, under section 290 of the act of June 8, 1872 (17 Stat. 320), which provided as follows: "Any person who shall steal, purloin, or embezzle, any mail bag, or other property in use by, or belonging to, the post office department, or who shall, for any lucre, gain or convenience, appropriate any such property to his own or any other than its proper use, or who shall, for any lucre or gain, convey away any such property, to the hindrance or detriment of the public service, every such person, his aiders, abettors and counsellors, shall, if the value of the property be twenty-five dollars, or more, be deemed guilty of felony, and, on conviction thereof, for every such offence, shall be imprisoned not exceeding three years; and, if the value of the property be less than twenty-five dollars, the party offending shall be imprisoned not more than one year, or be fined not less than ten nor more than two hundred dollars." The indictment contained twelve counts, and charged three different offences. Upon a trial, at the October term, 1873, before the honorable Charles L. Benedict and a jury, he was convicted. The verdict rendered was a general verdict of guilty. Thereupon, on November 3d,

1873, he was sentenced to be imprisoned for the term of one year, and to pay a fine of $200. Thereafter, and at the same term, he procured a writ of habeas corpus, and, upon the return thereof to the circuit court, held by Benedict, District Judge, showed to the court that $200 had been deposited with the assistant treasurer of the United States, at the city of New York, to the credit of the treasurer of the United States, as the fine imposed by such sentence, and claimed to be discharged from imprisonment upon the ground that the fine had been paid, and that he was, therefore, not liable to be imprisoned, inasmuch as the statute aforesaid, creating the offence, did not warrant a sentence of both fine and imprisonment. The court held that the facts shown did not entitle the defendant to be released, and the writ was dismissed. After that, and on the 8th of November, 1873, at the same term, the court, still held by Benedict, District Judge, directed that the sentence pronounced on the 3d day of November be vacated and set aside, and thereupon proceeded to pass judgment anew, and sentenced the defendant to be imprisoned for the term of one year. A second writ of habeas corpus was then applied for, and, a hearing being had before Woodruff, Circuit Judge, and Benedict and Blatchford, District Judges, holding the circuit court, under section 2 of the act of February 7, 1873 (17 Stat. 422), the application for the writ was refused. Subsequently, a third writ of habeas corpus was issued by the supreme court of the United States, and the prisoner was released by that court. The opinion of the court, delivered by Mr. Justice Miller, is reported in 18 Wall. [85 U. S.] 163. Mr. Justice Clifford and Mr. Justice Strong dissented, and the dissenting opinion of Mr. Justice Clifford is reported at page 178. After the release of the defendant he brought a suit against Judge Benedict, in the supreme court of the state of New York, to recover damages for false imprisonment. The imprisonment set forth as the cause of action was that resulting from the sentence pronounced November 8th, 1873. In that suit, upon a demurrer to the complaint, the special term, (Van Brunt, J.,) overruled the demurrer. The general term, in October, 1876, (Davis, Brady and Daniels, JJ.,) upon appeal, reversed the order of the special term, and dismissed the complaint. An appeal to the court of appeals was taken by the plaintiff.

The case was argued before the general term by Benjamin F. Tracy, Esq., on behalf of Judge Benedict, and the points taken by him were as follows:

I. The complaint shows the plaintiff charged with several offences against the United States, and his conviction of all the offences charged. The conviction is conceded to have been lawful. Upon such conviction the plaintiff became liable to the punishment imposed upon him by either or by both the sentences

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

set forth in the complaint. There was, therefore, no false imprisonment.

(1) The indictment set forth in the complaint, on its face, shows to this court that the plaintiff was not put on trial for a single transaction. The indictment necessarily covers three separate and distinct offences, committed on different days and in respect to different lots of mail bags. These charges against the plaintiff were required by statute to be joined in one indictment. Section 1024 of the United States Revised Statutes provides as follows: "When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offences, which may be properly joined, instead of having several indictments, the whole may be joined in one indictment, in separate counts; and, if two or more indictments are found in such cases, the court may order them to be consolidated." So far as is known, under this statute, it has been the constant practice, in courts of the United States, to include several offences in a single indictment, and, upon a conviction, to inflict punishment for each offence.[2] There can be no doubt that this statute is applicable to the plaintiff's case, and it was, therefore, charged in the indictment, that the defendant, at the various times stated in the several counts, stole and appropriated to his own use the mail bags described. Conceding that the same transaction is charged in different forms in the 1st, 3d, 5th, 8th, 10th and 12th counts, and conceding, also, that but one other offence or transaction is charged in the 2d, 4th, 6th and 11th counts, there can be no doubt that the 7th count charges an offence separate and distinct from that charged in any other count of the indictment. The 9th count was quashed. There were, then, three separate and distinct offences charged. The plaintiff was, therefore, convicted of at least three distinct and separate

offences, and could be lawfully sentenced for them all. Otherwise, his conviction upon different offences required by statute to be joined, would work an acquittal of all but one.

(2) No objection arises from the form of the verdict. The verdict was a general verdict of guilty. Such a verdict is a conviction upon every count in the indictment. It is not necessary to designate the counts in a verdict. A general verdict may always be rendered, which in law attaches to each count in the indictment. Such is the established effect of a general verdict of guilty; and this effect is the foundation of the rule, that, when some counts are bad, a general verdict of guilty is supported by one good count. In the indictment against the plaintiff all the counts, except the 9th, are good. If the verdict rendered against the plaintiff does not in law attach to each count in the indictment, to which of the counts is it to be attached, and by whom? Certainly this court cannot attach the verdict to any particular count, or to any set of counts; nor can it say, as matter of law, that the plaintiff was not found guilty of every offence set forth in the indictment. It is settled law, in this state, that a general verdict of guilty, rendered upon an indictment containing several counts, convicts the accused upon every count in the indictment (People v. Davis, 56 N. Y. 100), and the defendant may be sentenced on all counts that are valid (Com. v. Birdsall, 69 Pa. St. 482).

(3) The sentence may be general and need not specify any particular count. It is for the court that tried the cause to say, upon such a conviction, on how many counts of the indictment sentence shall be passed. When the sentence imposes a greater punishment than is prescribed by law for a single offence, it is presumed that the judge who tried the cause intended to sentence him on more than one count of the indictment. This precise question came before the supreme court of Massachusetts, in two different cases, at the same term. In Carlton v. Com., 5 Metc. (Mass.) 532, there were two counts in the indictment, charging separate offences. The judgment sentenced the prisoner to one day's solitary imprisonment, and confinement afterwards at hard labor, for the term of five years, in the state prison. The offence charged in the first count was punishable "by imprisonment in the state prison not more than five years." It was assigned for error that "said judgment is excessive and illegal, in the matter of the one day's solitary imprisonment;" and it was contended that the judgment was erroneous because distinct offences ought not to be included in the same indictment, and because, if they could be so included, there should have been separate sentences. The court held that two distinct offences could be included in the indictment, and affirmed the judgment, saying, (Shaw, C. J.): "We are of opinion that it is not necessary, in such cases, to award separate sentences, when they are so far alike that the whole of the judgment is but the sum of the several sentences to which the convict is liable." See, also, Booth v. Com., Id. 535; U. S. v. Bowerman [supra]. "Judgment is continually passed upon a record containing many counts, without adverting to any count in particular." O'Connell's Case, Parke, Baron, 11 Clark & F. 301. "In criminal cases, where each count is, as it were, a separate indictment, one count not having been disposed of no more affects the proceedings with an error than if it were two indictments." Latham v. Reg., 5 Best & S. 641.

(4) There is nothing in the language of the statute creating the offences in question, to prevent a conviction and sentence for separate and distinct offences committed on different days and with respect to different articles. If it be suggested that the statement added to the verdict, "and the value of the bags to be less than

[2] U. S. v. Mills [Case No. 15,777], Massachusetts district. The case was tried before Shepley, Circuit Judge. The indictment contained sixty-nine counts. The defendant was convicted on seven counts, for seven different transactions. Sentence was passed imposing a fine of $3,000 for each offence, in all, $21,000. U. S. v. Crane [Id. 14,886]. Vermont district, March, 1875, before Shipman, District Judge. Two separate indictments were found by the grand jury, one for embezzlement, the other for making a false entry. The court ordered the indictments to be consolidated. The defendant thereafter pleaded guilty, and was sentenced to pay $1,000 and be imprisoned one year for one offence, and, for the other offence, to pay $1,000 and be imprisoned one year after the expiration of the imprisonment first imposed. U. S. v. Eckel [Id. 15,022]. Southern district of New York, before Blatchford, District Judge, January 25th, 1869. Indictment contained eight counts. Conviction on six counts. Sentence as follows: "Alvah Blaisdell, upon the first count of the indictment, to be imprisoned in the state prison at Sing Sing for the period of three years, and judgment and sentence suspended upon the 2d, 4th, 5th, 6th, and 8th counts of the indictment, until after the full execution of this judgment." In re De Puy [Id. 3,814], Southern district of New York, before Blatchford, District Judge. The prisoner, in this case, being convicted of two offences on one indictment, was sentenced, for one offence, to be imprisoned one year and pay a fine, and, for another offence, to pay a fine and be imprisoned for six months, this imprisonment to commence on the termination of the imprisonment first imposed. Great efforts were made to secure from Judge Blatchford a release of the prisoner by habeas corpus, but the legality of the sentence was not questioned and the discharge was refused. U. S. v. Bowerman [Id. 14,630], Maryland district, before Giles, District Judge. An indictment against a deputy collector for embezzlement. There were five counts. The court directed the jury to acquit on the 5th count. The verdict was guilty on the first count as to $1,120; on the second count as to $996.72; on the third count as to $50; on the fourth count as to $180; on the fifth count, not guilty. Sentence as follows: "Sentenced by the court to pay a fine of $2,346.72 and costs, and to be imprisoned in the jail of Baltimore city for the term of four years."

twenty-five dollars," confines the verdict to a single count, the question again arises—to which count is it confined? This statement, if it be considered a portion of the verdict, must, like the rest of the verdict, be presumed to refer to each charge, and attaches to each count. If it be considered as giving the aggregate value of all the mail bags taken, the result is the same for some parts, and it is wholly immaterial what part is to be deemed applicable to each count. But, the statement in respect to value forms no part of the verdict. The statute under which the plaintiff was indicted does not make the nature of the offence depend upon the value of the property taken. In a prosecution under this statute, value becomes important only when necessary to justify an imprisonment exceeding one year. Imprisonment for one year may be imposed without regard to the value of the property. In criminal cases, as distinguished from civil cases, the court, and not the jury, determines the kind and the amount of the judgment; and the statement of value, in question, should be considered as a statement made simply for the information of the court in passing sentence. It is analogous to the statement that the accused is under 16 years of age, a fact which, in some cases, changes entirely the character of the punishment to be imposed.

(5) The circumstance that the first sentence, which inflicted punishment for two offences, was vacated, and thereafter a sentence pronounced which inflicted the punishment prescribed for a single offence, does not tend to show that the plaintiff was not liable to the punishment imposed by the first sentence; while the fact that, upon the return of the first habeas corpus, the court dismissed the writ before vacating the judgment, shows that the court adjudged the first sentence to be lawful. Reasons for vacating the first sentence, in no way connected with the idea of illegality, can easily be suggested. Such action is not infrequent in inflicting punishments for crime.

(6) There being three distinct offences charged in the indictment, and the punishment imposed by the sentences pronounced being lawful punishment for these offences, the presumption must be that these punishments were imposed for three offences proved; in which case, there was no false imprisonment.

(7) The sentences pronounced upon the plaintiff are in no way affected by the time of rendition. Being pronounced at the same term, they were in law pronounced upon the same day. No statute of the United States fixes the time within which sentence is to be pronounced. Unquestionably, it would have been lawful to have detained the plaintiff in prison, after conviction, until the last day of term, and then to have sentenced him to one year's imprisonment for every offence for which he stood convicted.

The reasons above stated are sufficient to show that this case, as it stands before this court, affords no room to assert the proposition that the second sentence of the prisoner was unlawful because "it was an attempt to enforce a judgment which the judge knew to have been satisfied." Van Brunt, J. None of the foregoing points were considered or passed on at the special term, Judge Van Brunt being of the opinion that it would not be decorous in him to declare an imprisonment lawful, from which the supreme court of the United States had released the prisoner upon habeas corpus. But good law is always decorous. This defendant is not bound by a judgment to which he was no party, nor can he be adjudged liable in this action upon ideas of decorum. Respectful consideration will, of course, be given to the opinion delivered by the supreme court upon discharging the plaintiff from imprisonment, but it does not conclude this court, nor prevent due effect being given here to the point

now made. Certainly, no breach of decorum can be charged upon this court if it adopts, from the opinion of the supreme court in Ex parte Lange, the language used by that court in regard to a decision of its own (see point VII., below), found standing in the way of what the dissenting opinion designates as "a pre-determined unsound judicial conclusion." Opinion of Clifford, Circuit Justice, Ex parte Lange, 18 Wall. [85 U. S.] 201. This court, therefore, may well say, in respect to the discharge of the plaintiff upon habeas corpus, that, "in general terms, without much consideration," the supreme court declared the plaintiff not liable to the punishment inflicted upon him. If it was intended to raise the question whether the plaintiff was not under conviction for several offences and liable to be punished for each offence, "that point was not presented so as to receive the attention of the court, and certainly was not considered or decided." Opinion of the Court, Ex parte Lange, 18 Wall. [85 U. S.] 167.

II. If the record can be held to show a conviction of only one offence, then the first sentence was a nullity; in which case, the second sentence was, of course, lawful.

(1) It does not follow, says the supreme court of the United States (opinion, Ex parte, Lange, 18 Wall. [85 U. S.] 176), because the court had jurisdiction of the person of the prisoner and of the offence. that these two facts make valid, however erroneous it may be, any judgment the court may render in such case. On an indictment for libel, a judgment of death or confiscation of property would be void.

(2) If the first sentence be deemed a sentence for a single offence, then it inflicts a punishment not authorized by law; and, whether void or voidable, the error affects equally each part of the sentence. How can it here be said, that that portion of the sentence which imposes the fine is valid, while that which inflicts the imprisonment is invalid? And how can it be left to the prisoner to determine for himself which part shall become valid and which remain invalid? The sentence is an entirety, and must stand or fall as a whole. unaffected by the subsequent action of the prisoner. It cannot be avoided in part and affirmed in part, and that by the prisoner instead of the court.

III. This is an action for false imprisonment. The imprisonment complained of is from the 8th of November, 1873, to the 29th of January, 1874. This period is embraced within the term of imprisonment as fixed by both sentences. The first sentence, therefore, if not vacated, renders the imprisonment lawful. The first sentence was vacated, or it was not. If, as the plaintiff contends, the first sentence was valid and beyond the power of the court to vacate it, then that sentence stands as the sentence of the circuit court; and, whether justified by the conviction or not, it subjected the plaintiff to imprisonment for one year. Consequently, there could be no false imprisonment by reason of the second sentence, inasmuch as, during the period of his imprisonment, the plaintiff was within the scope of the first sentence as well, and subject thereto. In order to maintain this action, therefore, it must be conceded by the plaintiff that the first sentence was lawfully vacated.

IV. The first sentence was vacated. That sentence having been expunged from the record, the second sentence, when pronounced, was the only sentence. The record, therefore, shows to this court a lawful conviction, and a sentence pronounced at the same term, imposing a punishment lawful for a single offence. It is by this record that the plaintiff's case must stand or fall, and the record shows the imprisonment complained of to have been lawful.

(1) The first sentence, whether incomplete, or irregular, or void, was within the control of the court during the entire term, and might be

vacated or modified for any error or irregularity therein, and a new sentence be pronounced in conformity with the law. Writs of error, in criminal cases, are not allowed in the courts of the United States, but such courts are authorized, by statute, to grant new trials for reasons for which new trials have usually been granted in the courts of law. The power to vacate a sentence is implied in the power to grant a new trial, and is necessary to the proper administration of justice. Suppose gross misconduct on the part of the jury should be discovered the day after sentence—does the fact that sentence has been pronounced deprive the court of the power to set aside or vacate the judgment, that it may grant a new trial? "It is, also, equally well settled, that the power of a court over its judgments, to set aside, modify or annul, is unlimited during the entire term at which such judgments are rendered." Union Trust Co. v. Rockford R. R. Co. [Case No. 14,401], Blodgett and Drummond, District Judges. "The court certainly had full power to amend their records, and are the sole judges of the correctness of the entries made therein." Sheppard v. Wilson, 6 How. [47 U. S.] 277. See, also, Doss v. Tyack, 14 How. [55 U. S.] 312. As no writ of error is allowed in the courts of the United States, in criminal cases, to hold that such courts have not the power to vacate a sentence would often deprive the accused of all power to vindicate his innocence.

(2) The first sentence was imperfect and incomplete. It was necessary that it be perfected or vacated, and it was, therefore, not only competent for the court, but incumbent upon it, to perfect or to vacate the sentence, as advised. It contained no directions to docket judgment for the fine, nor any order for execution, and there was no order to stand committed until the fine be paid. So far as the fine was concerned, the sentence was wholly ineffective, as it stood, for want of an "award of the proper process to carry into effect the sentence of the court." Kane v. People, 8 Wend. 215. Fines imposed by the courts of the United States are to be docketed as judgments and collected by execution, as in civil cases. Payments may also be enforced by imprisonment, when so ordered by the court.[3] Here, no commitment was ever directed or issued.

V. The exercise of the power to vacate a sentence, in cases where the sentence is in part executed, does not violate the constitutional provision which forbids that one shall be twice punished for the same offence.

(1) The application of the constitutional principle relied upon by the plaintiff was rejected by the supreme court in the plaintiff's case, where the court declares, that it is not necessary to say, that, "when a party has had a fair trial before a competent court and jury, and has been convicted, any excess of punishment deprives him of liberty or property without due course of law." 18 Wall. [85 U. S.] 170. It was also considered and rejected by the court of appeals of New York, in Ratzky v. People, 29 N. Y. 124. There, a sentence, passed upon a good conviction, and when in part executed, was set aside as unlawful, whereupon the power to pass a new sentence was questioned, and the constitutional protection was invoked. The power to sentence anew was upheld. Denio, C.

[3] "In all criminal or penal causes in which judgment or sentence has been or shall be rendered, imposing the payment of a fine or penalty, whether alone or with any other kind of punishment, the said judgment, so far as the fine or penalty is concerned, may be enforced by execution against the property of the defendant, in like manner as judgments in civil cases are enforced: Provided, that, where the judgment directs that the defendant shall be imprisoned until the fine or penalty imposed is paid, the issue of execution on the judgment shall not operate to discharge the defendant from imprisonment until the amount of the judgment is collected or otherwise paid." Act June 1, 1872 (17 Stat. 198, § 12); Rev. St. U. S. § 1041.

J., says (page 135): "The case is not within the constitutional provision which forbids a person being twice put in jeopardy for the same offence. A person is said to be put in jeopardy only when he is a second time tried upon a criminal accusation; but, the term has no relation to the reversal of an erroneous judgment and pronouncing a legal one, pursuant to one legal conviction." So, in the case of Foote v. People, 56 N. Y. 321, where the court below pronounced a sentence for a fine and ninety days' imprisonment, which, on appeal, was declared illegal, the court of appeals directed a new punishment to be imposed. In Harris v. People, 59 N. Y. 599, the defendant was convicted upon an indictment supposed to charge burglary in the second degree, and was sentenced to be imprisoned in the state prison, at hard labor, for the term of seven years and six months. It was held by the court of appeals, that the charge in the indictment was burglary in the third degree, and, consequently, that the punishment imposed was greater than that fixed by law for the offence charged. The court thereupon affirmed the conviction and remanded the case to the court below, with directions that the proper sentence be imposed.

(2) No sound distinction can be made between the plaintiff's case and other cases of sentences partly executed, by declaring that the payment of the fine expiated his crime, because it was a suffering of "one of the alternative punishments to which alone the law subjected him." There is no such thing as an "alternative punishment." The statute makes none, and this sentence made none. The conviction of the plaintiff rendered him subject to such punishment as should be fixed by the court. The statute creating the offence does not fix the punishment, much less an "alternative punishment;" nor does it declare that suffering a fine shall expiate this crime. The statute simply limits the power of the court to certain kinds of punishments and within certain bounds as to extent. What would expiate the crime, in this case, rested in the conscience of the court, and is only shown by the sentence of the court in the case. The only punishment to which the plaintiff ever became subject, must, therefore, be found in the sentences pronounced upon him; and the punishments there imposed he has never suffered.

(3) A sentence is a judgment of the court, but the judgment in a criminal case differs from the judgment in a civil case, in that it must contain a determination in respect to the kind as well as the amount of punishment, made not by the jury, nor by the convict, but by the court. It sounds strange to say that, when a court, in pronouncing sentence, leaves unperformed the duty imposed upon it by the statute, of selecting between two kinds of punishments, then the convict may determine that question himself, and, by electing to be punished by fine, deprive the court of all power to proceed further in the premises. The picture of a person whipped in pursuance of an erroneous sentence, has been alluded to with feeling, to show the necessity for a restriction of the power of courts. But there must be power somewhere. The court of appeals has power, by statute, in case of reversal, to direct as to the sentence to be imposed, and whipping might appear in a sentence so directed. Prisoners convicted of crime may escape just punishment, by means of the writ of habeas corpus. But such suggestions afford slim reason for an abrogation of the statute, in the one case, or the denial of the power to discharge upon habeas corpus, in the other.

VI. The proposition that the second sentence imposed upon the plaintiff was void, is made to depend upon the fact that the fine which formed a part of the first sentence had been paid. Payment of the fine has, it is said, expiated the crime. But, the fine was never

paid. This appears by the complaint; and it was also apparent at the passing of the second sentence. The facts relied on to show payment of the fine are set forth in the complaint. They show, on the contrary, that no legal payment of the fine was ever made. The facts stated are as follows: The first sentence was on November 3d. On November 4th, two hundred dollars was handed to the clerk, and retained by him until November 7th, when it was deposited with the assistant treasurer, "to the credit of the treasurer of the United States;" and, on the same day, the plaintiff obtained the first writ of habeas corpus, returnable November 8th, upon the return of which writ, the deposit made the day previous with the assistant treasurer was proved on the part of the petitioner, as ground for his discharge.

(1) The defendant was in the custody of the marshal. In order to pay the fine he must either pay the money to the marshal, directly, or obtain leave to pay the money into court, and, upon such payment, obtain an order of the court directed to the marshal, authorizing his release. The plaintiff pursued neither of these courses, but caused $200 to be deposited with the assistant treasurer, to the credit of the treasurer of the United States. It is true, that the clerk gave a receipt stating that the money was in the registry of the court on November 4th, but the receipt of November 7th shows that the money remained on that day undeposited in the registry. It was never deposited to the credit of the court, as required by law,[4] but, on November 7th, was still subject to the control of the plaintiff who, on that day, caused it to be deposited with the assistant treasurer. The clerk had no authority so to deposit it in behalf of the court. Such a deposit was, indeed, contrary to law; and the clerk, in making it, must be deemed to have acted as the agent of the plaintiff. The plaintiff, in his application for discharge on the first habeas corpus, made such deposit to appear, and thus shows that he relied on that deposit as his payment of the fine. The records of the circuit court, in the case of the plaintiff[5] show, also, to this court that no money was ever paid into court by the plaintiff.

(2) The $200 was never intended to be paid into court. On the contrary, it was deposited in Wall street, without the knowledge of the court, in order to place it beyond the reach of the court. If this money had been paid

into court, by the rules and by statute it would have been deposited in the Central National Bank, in the name and to the credit of the court, to be drawn therefrom only upon a check showing upon its face the order of the court so to draw it, and bearing the signature of the judge.[6] If so paid, it would have been within the power of the court to direct its return, by the clerk, to the person from whom he received it. It was not so paid, but was deposited to the credit of the treasurer of the United States, in order to prevent the possibility of a direction to return it.

(3) Money cannot be paid into court without leave of the court. No permission or direction to pay this money into court was ever given, and none is averred. The clerk is but the amanuensis of the court. He acts only by rule or direction of the court, and he cannot bind the court except as directed. A court is not, at the option of any one, to be made responsible for the custody and disposition of money, simply by the fact that a clerk may be willing to receive it. "The clerk had no right to receive the money without a rule of the court." Baker v. Hunt, 1 Wend. 103. The case is not that of an ordinary judgment regularly entered and an execution issued directing money to be made and returned to the court.

(4) The deposit of the money with the assistant treasurer cannot be relied upon as showing a payment of the fine to the United States. A payment of money, to be effective as a payment to the United States, must be made in the mode required by law. The delivery of money to the president, the secretary of the treasury, or the treasurer of the United States, amounts to nothing, unless authorized by some statute. The fine in question was imposed for the violation of a postal law. By statute, the money belonged to the post office department, as part of the postal revenue, and was to be deposited "for the use of the post office department." Rev. St. U. S. § 4059. "Unclaimed money in dead letters for which no owner can be found; all money taken from the mail by robbery, theft, or otherwise, which may come into the hands of any agent or employee of the United States, or any person whatever; all fines and penalties imposed for any violation of the postal laws, except such part as may by law belong to the informer or party prosecuting for the same; and all money derived from the sale of waste paper or other public property of the post office department, shall be deposited in the treasury, under the direction of the postmaster general, as part of the postal revenue." Act June 8, 1872 (17 Stat. 290, § 42); Rev. St. U. S. § 4050. In order to effect a payment to the United States of the fine in question, the money must go to the postmaster general to be deposited, under the direction of the postmaster general, in the treasury of the United States "to the use of the post office department." When so deposit-

[4] "Section 1. That all moneys in the registry of any court of the United States, or in the hands or under the control of any officer of such court, which were received in any cause pending or adjudicated in such court, shall within thirty days after the passage of this act, be deposited with the treasurer, an assistant treasurer, or a designated depositary, of the United States, in the name and to the credit of such court. And all such moneys which are hereafter paid into such courts, or received by the officers thereof, shall be forthwith deposited in like manner: Provided, that nothing herein shall be construed to prevent the delivery of any such money upon security according to agreement of parties, under the direction of the court. Section 2. That no money deposited as aforesaid shall be withdrawn except by order of the judge or judges of said courts, respectively, in term or in vacation, to be signed by such judge or judges and to be entered and certified of record by the clerk; and every such order shall state the cause in or on account of which it is drawn." Act of March 24, 1871 (17 Stat. 1, §§ 1, 2); Rev. St. U. S. §§ 995, 996.

[5] "The United States vs. Edward Lange. For stealing and embezzling mail bags. 1873. Oct. 7, Filed bill of indictment. Oct. 8. Arraigned. Plea—not guilty. Oct. 15. Motion to quash eighth, ninth, and eleventh counts of indictment. Ninth count quashed. Other counts stand. Trial commenced. Oct. 23. Trial concluded. Verdict—guilty; and the value of the property to be less than $25. Nov. 3. The prisoner, Edward Lange, is sentenced to one year's imprisonment, and to pay a fine of $200. Nov. 7. Filed petition for habeas corpus. Nov. 7. Issued writ of habeas corpus. Nov. 8. Writ discharged. Nov. 8. Sentence pronounced Nov. 3d, 1873, vacated and set aside, and the prisoner sentenced to one year's imprisonment."

[6] "At a stated term of the circuit court of the United States of America, for the Southern district of New York, in the Second circuit, held at the United States court-rooms in the city of New York, on Monday, the fifth day of June, in the year of our Lord one thousand eight hundred and seventy-one. Present—The Hon. Lewis B. Woodruff, Circuit Judge. In the matter of the deposit of moneys in the registry of the court. In obedience to an act of congress entitled 'An act relating to moneys paid into the courts of the United States, approved March 24th, 1871,' it is ordered, that all moneys in the registry of this court, or in the hands or under the control of any officer of this court, which were received in any cause pending or adjudicated in this court, be forthwith deposited in the Central National Bank of the city of New York, a designated depositary of the United States, in the name and to the credit of this court; and that all such moneys, which shall hereafter be paid into this court, or received by the officers thereof, shall be forthwith deposited in like manner: Provided, that nothing herein shall be construed to prevent the delivery of any such money upon security, according to agreement of parties, under the direction of this court."

ed. it would form part of account No. 7, "Fines and Penalties" (Rev. St. U. S. § 4049), and be available to the post office department as a part of the postal revenue; otherwise, not. Had it been paid into court, it would have been accounted for to the post office department. It would have been deposited in the Central National Bank, in the name and to the credit of the court, whence it would have been drawn under the order of the court for payment to the postmaster general, or, under his direction, into the treasury, to the credit of the post office department. What the plaintiff did was, to deposit two hundred dollars with the assistant treasurer, to the credit of the treasurer of the United States. So deposited, the money can never reach the post office department. Like "conscience money," it passed to the credit of the treasurer of the United States, but it balanced no account and discharged no debt.

(5) A sentence of the character of the first sentence passed upon the plaintiff, when made perfect, would assume the form of a judgment against the plaintiff for two hundred dollars, to be collected by the marshal upon execution; and the money, when received by the marshal, would be returned with the execution to the court, to be disposed of by the court in the manner before stated. The payment made by the plaintiff must, therefore, be deemed a voluntary payment. It was not made in pursuance of the sentence, and had no effect. The case, therefore, in every aspect, shows that the plaintiff has never expiated the crimes of which he stands convicted.

VII. So far as the liability of the defendant is concerned, the legality of his acts must be determined by the law as it then stood declared. According to that law, as declared by the supreme court of the United States, the legality of the second sentence would not be affected by the fact that a previous valid sentence, under which the accused had suffered punishment, had been made and set aside.

In Basset v. U. S., 9 Wall. [76 U. S.] 38, it was decided, that it is competent for a court, for good cause, to set aside, at the same term at which it was rendered, a judgment of conviction, though the defendant had entered upon the imprisonment ordered by the sentence. The same court that discharged Lange on habeas corpus, in 1874, declared, in Basset's Case, in 1869, that "this control of the court over its own judgment, during the term, is of every day practice." This language was used by the supreme court, in a case where, in execution of the sentence, the defendant was taken to prison and imprisoned several days, and then, on habeas corpus, issued on motion of the district attorney, brought from the prison into court, and then, likewise on motion of the district attorney, the judgment was vacated and set aside. The defendant then withdrew his plea of guilty and gave a recognizance for his appearance for trial at a future term of the court. Failing to appear for trial in pursuance of his recognizance, an action was brought against the sureties upon the bond. To this action the sureties answered, in substance, that, Basset having been once tried, convicted, and sentenced to imprisonment on the indictment, and having been taken in execution of such sentence and imprisoned, such imprisonment was an expiation of the offence, and that the action of the court in holding him to bail to again answer upon the same indictment was in excess of the power of the court, and was illegal and void. This case is directly in point, and is so conceded to be by the supreme court in Ex parte Lange. It furnished, then, the law binding upon the circuit court of the United States at the time Lange was sentenced. It is, indeed, now said by the supreme court, that the decision in Basset's Case was made "in general terms, without much consideration, for no counsel appeared for the

sureties," and that, for that reason, it is now to be disregarded. But, how could the defendant know that a case which the supreme court of the United States had decided and caused to be reported as an authority, had not received the attention of the court, and that the court had not considered what it had decided? He was bound to take the law as he found it declared; and, in sentencing Lange, the circuit court exercised precisely the same power exercised in Basset's Case, and approved by the supreme court. What was lawful for the court to do in Basset's Case, was lawful for the court to do in the plaintiff's case. It is, indeed, true, that what in Basset's Case was declared to be lawful, has since, in Lange's Case, been declared unlawful. But, the defendant is to be judged by the law in force at the time he acted. For the future, the later decision may furnish the rule in courts of the United States, unless, on some other day, the supreme court should say that, having been decided without much consideration, for no counsel appeared for the judge, it is to be disregarded.

It has now been shown that neither the first sentence, nor the second sentence, nor both together, imposed upon the plaintiff a greater punishment than the law allowed. It has also been shown, that the first sentence was lawfully vacated, and that the record shows but a single sentence, imposing lawful punishment for a single offence. It has also been shown, that, by the law as it was at the time, and as it now is, except as modified by the decision in Ex parte Lange, the first sentence having been set aside on objection taken by the accused, no previous payment of the fine, if made, would deprive the court of power to proceed in the cause, and to sentence anew. It has also been shown, that the fine was never paid. It is submitted, that, under the circumstances, the defendant is entitled to a determination of these questions at the hands of this court, notwithstanding it be plain that, for other reasons, the action cannot be maintained.

VIII. The act of the defendant, in pronouncing the judgment of the circuit court of the United States, upon the conviction of the plaintiff then standing on the records of the court, was a judicial act, and affords no right of action against the judge who happened to be holding the court. Neither malice nor corruption is here charged or suggested.

(1) Suits have frequently been brought against judges, and, whether maintainable or not, will continue to be brought from motives more or less creditable to the promoters thereof. They do not call for any stretching of the law in order to uphold them. Says Hale, C. J.: "I speak my mind plainly. Habeas corpus, although it doth make void the judgment, it doth not make the awarding of the process void to that purpose; and the matter was done in a course of justice. They will have but a cold business of it." Bushell's Case, 1 Mod. 119.

(2) As early as in the reign of Charles II. it was held by the court of king's bench, that an action will not lie against a magistrate for false imprisonment in consequence of acts done by him in the character of a judge. That rule has never been departed from by the English courts. Hawkins says (book 1, c. 72, § 6): "The law has freed the judges of all courts of record from all prosecutions whatsoever, except in the parliament, for anything done by them openly in such courts, as judges. For, the authority of a government cannot be maintained unless the greatest credit be given to those who are so highly intrusted with the administration of public justice; and it would be impossible for them to keep up in the people that veneration of their persons and submission to their judgments, without which it is impossible to execute the laws with vigor and

success, if they should be continually exposed to the prosecutions of those whose partiality to their own causes would induce them to think themselves injured." This principle ·was asserted as early as the Book of Assize (27 Edw. III. pl. 18), where A. was indicted, for that, being a judge of oyer and terminer certain persons were indicted before him of trespass, and he had entered upon the record that they were indicted of felony, and judgment was demanded if he should answer for falsifying the record, since he was a judge by commission; and all the judges were of opinion that the presentment was void. The same protection was, at this early period, extended equally to grand jurors. In 21 Edw. III. Hil. pl. 16, a writ of conspiracy was sued in king's bench, and the question was, whether it would be a good plea to the action, that the defendants were indictors in the case complained of; and it was held to be a good plea. Staunford, in his Pleas of the Crown, first published in 1567. says (page 173) that no prosecution for conspiracy lies against grand jurors, for it shall not be intended that what they did by virtue of their office was false and malicious; and that the same law ·applied to a justice of the peace, for he shall not be punished as a conspirator for what he does in open session, as a justice. In Floyd v. Barker, 12 ·Coke, 23, the subject ·was considered by Lord Coke and all the judges, and they resolved, that no grand juror was responsible for finding an indictment, and that no judge, who tries and gives judgment in a criminal case, or does any act in court, shall be questioned for it at the suit of the party against whom judgment was given. And it was observed, that, if the judges of the realm, who have the administration of justice, were to be drawn into question, except it be before the king himself, it would tend to the slander of justice, and those who are the most sincere would not be free from continual calumniations. In Aire v. Sedgwicke, 2 Rolle, 199. Noy, Judge, said that "no action lay against a judge for anything which he did as judge." But, the case of Hamond v. Howell, 1 Mod. 184, 2 Mod. 218, is directly in point. The defendant was a recorder of London, and, as one of the judges of oyer and terminer, had fined and imprisoned the plaintiff because he brought in a verdict, as petit juror, contrary to the direction of the court and the evidence. This case was brought after the Case of Bushell, who was another juror fined with the plaintiff for the same cause, and who had been discharged on habeas corpus, upon the ground that his imprisonment was illegal and a usurpation. The act of the judge was admitted to be illegal and void, and the effort was made to except the case from the general principle, by arguing that what the defendant did was not warranted by his commission, and that, therefore, he did not act as judge. But, the court held the action to be without authority or the semblance of authority, and they declared that the bringing of the action was a greater offence than the imprisonment of the plaintiff, for it was a bold attempt both against the government and justice in general. A warrant granted by the chief justice of the queen's bench, in chambers, returnable into that court, to arrest a party for breach of the peace, is such a judicial act as will protect him against an action for false imprisonment, although, from the want of proof before the chief justice, of the facts recited in the warrant, his act of issuing the warrant was declared to be without authority and illegal. Taaffe v. Downes, 3 Moore, P. C. 41, note. In Sutton v. Johnstone, 1 Term R. 493, it was held, that no action lies against a judge for acts done in that capacity; that the law raises a presumption in favor of a judge, and will not (as in ordinary cases) suffer that presumption to be rebutted; and that, if otherwise, it would deter them from doing their duty. Many other English cases could be cited.

(3) The rule, so early established and so uniformly adhered to in England, has, without an exception,· been followed in this country. The case of Yates v. Lansing, 5 Johns. 282, is among the earliest cases. and is the leading case upon this subject. Chancellor Lansing committed Yates for contempt of court. He was discharged, on habeas corpus, by Chief Justice Spencer, of the supreme court. After his discharge he was rearrested and imprisoned, by order of the ·chancellor. This imprisonment was declared to be illegal by the court of errors, and the plaintiff was discharged. He then brought his action against the chancellor, to recover the penalty given by statute. The defence rested, mainly, on the ground that the act complained of was done by the defendant in his judicial capacity, while sitting in the court of chancery, and that, ·for such an act, no action would lie. In the opinion delivered by Chief Justice Kent, the English authorities were all reviewed, and the ruling there established was affirmed in its broadest terms, as the law of this state; and it was asserted that judges of all courts of record, from the highest to the lowest, are exempt from prosecution, by action or indictment, for what they did in their judicial character. The supreme court of the United States. in Bradley v. Fisher, 13 Wall. [80 U. S.] 335, affirmed the doctrines of Yates v. Lansing, in the following language: "In this country, the judges of the superior courts of record are only responsible to the people or the authorities constituted by the people. from whom they receive their commissions, for the manner in which they discharge the great trusts of their office." "Judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." The circuit courts of the United States are courts of record, and have general jurisdiction of all offences committed against the United States.

(4) The act here complained of was a judicial act. The circuit court of the United States for the Southern district of New York had jurisdiction of the offences charged against the· plaintiff. It also had jurisdiction of his person. acquired by due process of law, and not terminated by any discharge. The sentence complained of·formed a part, and appears in the record as a part, of a lawful criminal prosecution then pending before that court. The defendant was before the court, in custody, upon a good conviction theretofore had, and upon that conviction he was sentenced by the court. How, then. can it be said that the pronouncing of the sentence· of the court was not a judicial act? Certain inferior officers sometimes act ministerially and sometimes judicially. For errors or mistakes committed when they act ministerially, such officers are liable to the party injured, but they are never liable for errors of judgment when they have jurisdiction of the subject-matter, and the acts complained of were in their nature judicial. Barhyte v. Shepherd, 35 N. Y. 251. Acts done by judges of courts of record are classified as judicial and extra-judicial. Their acts pertaining to the causes pending in their courts are always judicial. Vin. Abr. tit. "Judges"; Floyd v. Barker. 12 Coke, 23. A judicial act, when performed by a judge of a court of record, may be defined to be whatever he does in his ·judicial capacity, and· which he cannot do in any other. To this rule there are a few exceptions, such as refusing writs of habeas corpus, and settling and signing bills of exceptions. These are exceptions to the general rule, made such by statute. As to all other acts of a judge, whether in court or out of court, if they cannot be done in any other than the judicial capacity, they are judicial acts. An extra-judicial act is one done by a judge in his private capacity, and which any citizen may do. If the act is one which none

but a judge can do, then it is judicial and not extra-judicial. All acts done by a judge in furtherance of a case depending in court, the issuing of writs, making orders, and passing sentence, &c. are acts which can only be done by a judge and no other person, and must be done in a judicial capacity. The act here complained of was an act of judgment, where the defendant, being judge, at the end of an important criminal prosecution, where the plaintiff had been legally indicted, tried and convicted, exercised the proper functions of a judge, and, from the bench, in open court, at a regular term thereof, assisted by the clerk and marshal, in the presence of the party, upon discussion, in view, subject to public observation, in presence of the bar, and when the party had been heard by counsel, pronounced the solemn judgment of the circuit court of the United States, which judgment was then and there entered upon the record, and was executed by the marshal as a judgment. For, mark, no execution or commitment was issued by the defendant to the marshal. The plaintiff was imprisoned by no personal direction of the defendant, but by virtue of the sentence, as a judgment of the court, executed as such by the marshal. That record still stands, and must ever stand, as the judgment of the circuit court of the United States, for there is no tribunal empowered to reverse it. It may be called irregular—it may be called illegal; but the judgment still remains the judgment of a court having general jurisdiction over all offences committed against the United States, and which, beyond all question, had acquired jurisdiction of the person of the plaintiff. It is said that the court had lost jurisdiction of the person of the plaintiff by reason of the payment of the $200, and that, therefore, the sentence of the court was simply the act of a private person in regard to a bystander. But, the court having once acquired jurisdiction of the person, whether such jurisdiction had been lost, must, in its very nature, be a judicial question. It was one which a judge, as judge, was not competent to decide. It was a question to be decided by the court, in court. The plaintiff was before the court, in the custody of the marshal. That he had been legally committed to the custody of that officer, upon conviction, was not disputed; but, it was insisted that something had occurred, since he was thus legally committed, which entitled him to be discharged. This question the court was called on to adjudicate. Whether he should be discharged or be sentenced was then to be decided. The court decided that he was not entitled to be discharged and passed sentence; and that decision was final, from which no writ of error lay. The determination thus made involved the questions—whether the first sentence was valid or void; whether, valid or void, it could be vacated at the same term; whether, if the first sentence were vacated, the court had power to pronounce a second sentence; whether the power of the court to pronounce the second sentence was affected by the alleged payment of the fine; and whether the plaintiff had, in fact, paid the fine. All these questions the circuit court was forced to consider and determine. The defendant presiding, as judge, pronounced the judgment of the court thereon; and now it is sought to hold him liable upon the ground that, in so doing, he did not perform a judicial act.

IX. The judgment should be reversed, and judgment be given for the defendant.

DANIELS, J. This action has been brought to recover for the unlawful imprisonment of the plaintiff by the defendant, who is the United States district judge for the Eastern district of New York It appears by the complaint and the copies of the papers annexed to it, showing the proceedings had, that the plaintiff was indicted, tried, and convicted at a term of the circuit court of the United States for the Southern district of New York, held by the defendant, of the crime of larceny committed by stealing mail bags of the value of less than twenty-five dollars. By the act of congress defining the offence and its punishment, that rendered the plaintiff liable to be sentenced to pay a fine not exceeding two hundred dollars, or to be imprisoned not exceeding one year. In finally disposing of the case, the defendant imposed both these punishments upon him. The plaintiff paid the fine and applied to be released from custody by means of the writ of habeas corpus, because he had suffered one of the alternative punishments provided for the offence. That was denied, and the court, by order entered, directed the sentence which had been pronounced to be vacated, and then sentenced the plaintiff to one year's imprisonment upon his conviction. He had then been in custody five days, and afterwards applied to the circuit court of the United States, where the circuit judge, Lewis B. Woodruff, the district judge of the Southern district, Samuel Blatchford, and the defendant, were upon the bench, presiding, for a writ of habeas corpus to discharge him from further imprisonment, because of its illegality. The application was heard, and, after being considered, was denied. He then applied for another writ of habeas corpus, which, together with a writ of certiorari, was issued by the supreme court of the United States, and, upon the hearing had on the return made to both writs, the plaintiff was discharged from custody, the court holding that he could not lawfully be sentenced to imprisonment after what had transpired in the case. Ex parte Lange, 18 Wall. [85 U. S.] 163. After that this action was brought against the defendant, for false imprisonment; and a very able argument has been made by the learned counsel for the plaintiff in favor of maintaining it. But the report of the case itself, as it was considered and decided by the supreme court of the United States, would seem to be sufficient to negative the assertion that such an action can be maintained, upon the facts in the case. The sentence was changed by the same court, at the same term during which the first sentence was pronounced; and a learned and extended examination by the court of last resort was found necessary for the purpose of maintaining the position that the change was improperly and unlawfully made. The opinion in which that view was sustained—and it was done by one of the ablest judges of the present time—proved unsatisfactory and unconvincing to two members of that learned court; and its conclusions were controverted by one of those two, in an opinion rarely if ever excelled in the thoroughness of its investigations and researches, or the vigorous logic tracing and exhibiting their results. Under these circumstances, it cannot with the least propriety be held that the point presented to the defendant was not a doubtful one, or that its decision and determination did not require the exercise of judicial functions. The examination and discussion which it received when it was finally decided, most conclusively establish the contrary; and that of itself should be deemed to be sufficient to shield the defendant from personal liability. The law was, to say the least, in such a condition as to afford ostensible support to each side of the proposition presented, and to render the development of a satisfactory and consistent conclusion intricate and difficult. Different minds could very well, and would very naturally, be led to different results concerning the propriety of the course pursued in the disposition of the case by the circuit court. Two other judges of great learning and experience in that court held with the defendant, that the proceedings were not invalid; and the plausibility of their decision was finally corroborated by the opinion of Mr. Justice Clifford. If, with

that weight of authority in support of the action that was taken, a judge could be held personally liable for its consequences, judicial protection would be at once wholly destroyed, and the utility of the courts practically subverted. For, the result would finally be, that all unauthorized determinations arising out of misapprehensions of the law, or of miscalculations of the true weight of authority, affecting the person or property of the defeated party, would furnish a cause of action for trespass or false imprisonment. And no court could possibly be protected against such liability; for, even those of last resort not unfrequently find it necessary to re-examine, distinguish, and finally overrule their own decisions. And it certainly is no discredit to the learned tribunal by whose mandate the plaintiff was set at liberty, to say that it has not always found itself at liberty to disregard that alternative. The law is the most complicated of all practical sciences; and it cannot fail to become more so as the intricacies of business and enterprise increase and advance. Differences of opinion upon legal subjects cannot be avoided, even by the most patient attention and laborious investigation: and, when they do arise, erroneous conclusions are required to be excused, as the natural consequences of human fallibility. When a party has been brought before a court of justice in a legal manner, and circumstances are presented requiring a decision to be made, the tribunal making it cannot be deprived of protection because it may afterwards, upon further and fuller investigation, turn out to have been erroneous. That was the case of the plaintiff. He had been convicted of a crime punishable by fine or imprisonment. The court inadvertently imposed both. When its consideration was directed to the misapprehension under which the sentence had been pronounced, an effort was made to correct it in such a manner as to comport with what was considered to be just in the case; and that correction it was held could be and was designed to be made. The emergency which had arisen required a decision to be made. The judge could neither avoid it nor escape from it. His duty required him to act, and he had the power to decide, and he did so, according to the best of his judgment; and for that he cannot, upon any sound principle of accountability, be held to be personally liable. He had, for that purpose, jurisdiction of the person and the subject-matter. Both were before him, and his decision was necessary. He could not avoid making it if he would, and, as it turned out, he decided erroneously.

The rule by which judicial officers have been exonerated from liability for the consequences of their decisions has gone much further than is required for the protection of the defendant. In Yates v. Lansing, 5 Johns. 282, the assertion was approvingly mentioned, "that no authority or semblance of an authority" had been urged for an action against a judge of record, for doing anything as judge; that this was never before imagined, and no action would lie against a judge for a wrongful commitment any more than for an erroneous judgment. Id. 294. That principle was affirmed afterwards, in the same case, by the court of errors (9 Johns. 395), and to the same effect are Jenkins v. Waldron, 11 Johns. 114; Vanderheyden v. Young, Id. 150; Wilson v. Mayor of New York, 1 Denio, 595; Weaver v. Devendorf, 3 Denio, 117; Bradley v. Fisher, 13 Wall. [80 U. S.] 335. In the case of Rochester White Lead Co. v. City of Rochester, 3 Comst. [3 N. Y.] 463. it was said that, "whenever duties of a judicial nature are imposed upon a public officer, the due execution of which depends upon his own judgment, he is exempt from all responsibility by action, for the motives which influence him and the manner in which such duties are performed." Id. 466. To secure this immunity, it is sufficient that a case requir-

ing judicial action is presented to the judge. Harman v. Brotherson, 1 Denio, 537; Landt v. Hilts, 19 Barb. 283.

The defendant's right to exemption from personal liability in this case rests upon still more cogent circumstances than those already relied upon. For, the decision of the United States supreme court, to which he was bound to subordinate his action, had previously affirmed the existence of the authority which he exercised in changing the punishment. Cheangkee v. U. S., 3 Wall. [70 U. S.] 320; Basset v. U. S., 9 Wall. [76 U. S.] 38. In the last case, the person proceeded against had pleaded guilty to an indictment, and had been sentenced to imprisonment, and was actually sent to prison, in pursuance of the sentence. A few days after that he was brought again into court by means of a writ of habeas corpus, and, on the district attorney's motion, the judgment was set aside and the prisoner had leave to withdraw his former plea of guilty. This was all done during the same term, as it was in the case of the plaintiff, and the court unanimously held it to be proper. That was not done because the proceeding was favorable to the defendant, but for the sole reason that, during the same term, the court had full power to control and change its judgments. That subject was very fully discussed and the authorities cited upon which the principle rested, by Mr. Justice Clifford, in his opinion in Ex parte Lange, 18 Wall. [85 U. S.] 191–195. A decision of the same nature was made after the execution of the sentence had commenced, by reducing the term for which transportation had been provided, in the case of Rex v. Price, 6 East, 323, 327. The circuit court had no power, even if it had the disposition, to gainsay or deny the accuracy of the legal principle sanctioned by the case of Basset v. U. S., supra. It not only had the power, but it was bound to conform its action to the principle maintained by that authority. That was as obligatory upon the defendant at the time as positive legislation would have been; and he appears to have acted under its sanction. At that time his action was strictly lawful, and it cannot be denied that the authority of that case then afforded him complete protection for the change made in the sentence, and it would probably be conceded to continue to do so, had it not been since impaired as authority by the final decision made in the plaintiff's favor. Under the doctrine of that case, he was vested with clear jurisdiction over the subject-matter brought before him, and it at the same time indicated the manner in which it should be exercised by him. That it was, as the learned justice stated in his opinion in the plaintiff's favor, decided "in general terms, without much consideration" ([Ex parte Lange] 18 Wall. [85 U. S.] 167), could not change its effect as authority, where it was followed by the circuit court. The defendant presiding there could not then, with the least propriety, have assigned that as a reason for disregarding it as authority. The decision was then in full force, as it had been made. It was promulgated by the court, in its published reports, as a proper exposition of the law; and it would be exceedingly unjust, under such circumstances, to render the defendant's protection dependent upon the views afterwards taken to correct it, by the court that had pronounced it. That tribunal could correct it, as it has, when it was discovered to be wrong, but he had no such power over it. It was his duty to conform his official action to it, and for that it cannot be that he can be held personally liable because the authority of the decision has since been superseded by another. His conduct, on the other hand, should be so far sustained as to secure him immunity, the same as it would have been if a statute had existed in favor of it, which the legislature afterwards repealed. For future purposes the repeal obliterates the law, the same as though it had

never been enacted. But acts previously performed are still maintained by force of the law which sanctioned them at the time of their occurrence. This principle is too familiar to require the citation of authorities for its support, and all its reasons are applicable to the case now before this court.

The principle invoked for the support of this action would sanction suits against judges for their official acts, in a large class of cases, if it should receive the approval of the courts. It would be difficult to exclude from its comprehension any cases where imprisonment should be pronounced or continued which might afterwards be declared to be not warranted by the final view taken of the law. No authority has gone so far as that, and it is not probable that any will be hereafter so widely extended. The settled principle, on the contrary, is, that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. Bradley v. Fisher, 13 Wall. [80 U. S.] 347.

The defendant cannot be held liable for the consequences of the imprisonment following the change made in the sentence. He acted judicially in making it. The exigency required him to decide, and that included the power to decide wrongly, without liability to himself, particularly as it practically required the abrogation of an existing and, for the time, controlling authority, to render the error apparent. It is entirely evident that he was actuated solely by the motive of performing his duties, for the best interests of the public, by subjecting the plaintiff to what was believed to be no more than a proper measure of punishment for the offence of which he had been convicted. That he considered his acts to be fully warranted by the decision of the tribunal from which he was bound to receive the law, is clearly shown by what the case shows to have transpired; and in that view he was supported by other eminent judges. To hold him liable for a change afterwards made in it, would seem to be hardly less than a positive perversion of justice. That he cannot be held liable for the five days' imprisonment under the sentence as it was at first pronounced, follows from the view which was adopted in the decision of the habeas corpus. For, it was there distinctly held, that "the judgment first rendered, though erroneous, was not absolutely void. It was rendered by a court which had jurisdiction of the party and of the offence, on a valid verdict. The error of the court in imposing the two punishments mentioned in the statute, when it had only the alternative of one of them, did not make the judgment wholly void." Ex parte Lange. 18 Wall. [85 U. S.] 174. And, as the defendant had the same jurisdiction over the subject when the plaintiff's first sentence was vacated and the last one was pronounced, he is equally entitled to the same protection as to this portion of the case. The sentence, under the circumstances, was not void. It was simply voidable, by the operation of the restriction subsequently imposed upon the principle established by the case of Basset v. U. S., supra, and that effect was first given to it long after the power of the defendant's court had been exhausted.

The order should be reversed, and an order entered sustaining the demurrer, with the usual leave to the plaintiff to amend, on payment of costs.